UNITED SATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

09 JUN -2 PM 4: 41

LAWRENCE R.GLAZER,
individually and on behalf of all
similarly situated individuals

PLAINTIFF

vs.

CHASE HOME FINANCE LLC,
A Delaware Limited Liability Company;
CINDY A. SMITH, in her capacity as
Employee of CHASE HOME FINANCE
LLC; REIMER, ARNOVITZ, CHERNEK
& JEFFREY Co., an Ohio Legal
Professional Association;
RONALD CHERNEK Esq.;
DARRYL GORMLEY Esq.;
SAFEGUARD PROPERTIES Inc,
an Ohio Corporation; and DOES 1-5

DEFENDANTS

Civil Action No. CV 1262

**JUDGE BOYKO**

MAG. WHITE

**COMPLAINT FOR DAMAGES**
**and**
**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and one or more subclasses of those similarly situated,

alleges and states as follows:

1.    This is an action for damages, declaratory relief, and other equitable relief arising

from Defendants' unfair and/or deceptive acts and practices in violation of the Fair Debt

Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692 et seq., *as amended*,

the Ohio Fair Debt Collection Practices Act, ORC §1319.12 et seq., and other state

statutes.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over Plaintiff's FDCPA claims

pursuant to 15 U.S.C. §§1692(a) & (k) and 28 U.S.C. §1331.

3.      This Court has supplemental jurisdiction over the remaining claims stated in this

complaint pursuant to 28 U.S.C. §1367(a) because these claims form part of the same

case or controversy under Article III of the United States Constitution.

4.      Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202.

5.      Venue is proper in the United States District Court for the Northern District of

Ohio pursuant to 28 U.S.C. §§1391(b) and (c) because all defendants are either residents

and/or conduct business within this district and many of the representations giving rise to

Plaintiff's FDCPA claims were made within this district.

## PARTIES

6.      Plaintiff, Lawrence R. Glazer is and at all times relevant to this complaint was an

individual residing in La Quinta, California. Plaintiff is a "consumer" as defined in 16

U.S.C. §1692(a)(3).

7.      Defendant Chase Home Finance LLC [hereinafter "Chase"] is a Delaware limited

liability company and successor by merger to Chase Manhattan Mortgage Corporation,

with its principal place of business in Iselin, New Jersey. Chase transacts business in this

district.

8.      Defendant Cindy A. Smith, a resident of Ohio, was at all times herein mentioned

employed by Chase.

9.      Defendant Reimer, Arnovitz, Chernek & Jeffrey Co, LPA [hereinafter 'RACJ'] is

a law firm located in Twinsburg, Ohio. The principal purpose of the firm's legal practice

is the collection of debts alleged to be due another through foreclosure and bankruptcy proceedings.

10.     Defendant Ronald Chernek Esq., a resident of Ohio, is a lawyer licensed to practice law and a partner of RACJ.

11.     Defendant Darryl Gormley Esq., a resident of Ohio, is a lawyer licensed to practice law and in the employ of Defendant RACJ.

12.     Safeguard Properties Inc. is an Ohio corporation with its principal place of business in Cleveland, OH.

13.      The true names or capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein as Does 1 through 5 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names, and Plaintiff will amend this complaint to show their true names and capacities when ascertained.

14.     At all times herein mentioned Defendants were "debt collectors" as defined in 15 U.S.C. §1692(a)(6).

15.     Defendant Chase directs, controls, formulates, or participates in the acts and/or practices alleged in this complaint. Defendants RACJ, Chernek, Gormley, and Safeguard Properties Inc. routinely act in the interest of Chase and/or as agents for said Defendant.

16.     At all times each Defendant, for their own individual and/or financial advantage, was acting in furtherance of an existing conspiracy to defraud consumers and in concert with the other Defendants.

DEFENDANTS' BUSINESS PRACTICES

17.     Defendant Chase plays a prominent role in the secondary market for residential mortgage loans by acquiring and servicing a large volume of such loans.

18.     Chase is an approved seller and servicer for Fannie Mae and Freddie Mac.

19.     During the explosive growth of the mortgage industry Chase acquired for servicing a large number of loans, including GSE owned loans. Chase failed to implement sound internal policies and practices in order to maintain and safeguard the integrity of the process of handling, managing, and modifying consumer loans. As a direct result Chase failed to obtain timely and accurate information on the loans it serviced; neglected to update and/or correct its loan data in timely fashion; made inaccurate claims to consumers; and engaged in a pattern and practice of unlawful, deliberately deceptive collection and servicing practices.

20.     During the recent residential mortgage crisis many of the loans serviced by Chase went into default because borrowers were unable to keep up with their payments; other loans were declared and treated as "accounts in default" solely due to wrongful acts and omissions of Chase employees.

21.     In its capacity as a debt collector for "defaulted" loans owned by others and for loans acquired after having been declared in default, Chase routinely makes representations to consumers about their loans, including but not limited to the name of the creditor, the unpaid principal balance, the due date, the interest rate, the monthly payment amount, the delinquency status, fees, and assessed corporate advances. Chase routinely makes these representations in collection calls and notices, monthly statements, payoff statements, reinstatement quotes, foreclosure filings, and bankruptcy filings without obtaining hard copies of the documents relating to the alleged debts and the complete loan information from the actual creditor, prior servicer, and/or seller. Chase, RACJ, and their employees routinely make these representations to borrowers and the

4

courts without having conducted quality control and other data integrity checks to ensure the factual accuracy of their representations relating to consumer debts as defined in section 803(5) of the FDCPA, 15 USC §1692a(5).

22.     Defendants routinely lack a reasonable basis for their representations to borrowers, and their representations to the courts, because they fail to obtain accurate and complete information about consumers' loan accounts and alleged debts. Despite indications that loan data obtained from prior loan servicers and loaded onto Chase's servicing system was often inaccurate or unverified, Defendants have nonetheless used that data to make representations to borrowers and the courts about loans and alleged debts. As a result Defendants have made inaccurate claims to consumers and engaged in unlawful and deceptive collection practices.

23.     In connection with debts owed another and loans that were in default when obtained by Chase, Defendants have failed to disclose in initial communications with consumers that Chase, in its capacity as debt collector, was attempting to collect a debt and that any information obtained would be used for that purpose. In addition, Defendants have failed to send consumers a written notice, or have sent untimely and/or defective notices, containing the amount of the debt, the creditor's name, and the consumer's right to dispute and obtain verification of the debt.

24.     In connection with debts owed another and loans that were in default when obtained, Chase imposes capricious and unlawful restrictions on the manner, place, and form in which delinquent payments must be paid. Chase routinely and wrongfully rejects payments made by borrowers without sufficient legal or contractual basis.

5

25.     In connection with foreclosure filings, Defendants routinely rush to file foreclosure complaints without properly investigating and verifying the delinquency status of the loan. With respect to debts owed another and debts already in default when obtained by Chase, Defendants and their attorneys routinely file foreclosure complaints supported by affidavits that deliberately, maliciously, and falsely claim that Chase is the holder and owner of the underlying promissory note, and thus a creditor, when in fact Chase has no ownership rights in the note and is simply attempting to collect a debt owed or due another. In so doing Defendants intentionally conceal material facts from borrowers and the courts in an effort to obtain quick decrees of foreclosure and reap financial benefits through "corporate advances" tacked to the principal owed by the borrower.

26.     As a debt collector Chase "advances" money to borrowers to pay for items such as property inspections and maintenance that are deemed necessary to protect the note holder's rights in the property. Pursuant to the recorded mortgage contracts Chase adds these "corporate advances" to the consumer's loan balance. In many instances, however, Chase charges borrowers for alleged property inspection fees and maintenance fees when the real purpose of the inspector's and/or property management employee's visit to the property was to attempt to collect on the loan and to harass, annoy, and pressure the borrower. Chase often charges borrowers for property inspections and employs property management firms, such as Defendant Safeguard Properties Inc., even when Chase has no reasonable basis to conduct an inspection or undertake property maintenance, as in cases of newly acquired accounts, non-abandoned property, and excessive, abusive inspections.

27.    When borrowers request the amount of money required to reinstate or pay off

their loan, Chase routinely assesses fees, such as late fees, prepayment penalties, loan

modification fees, property inspections, and court costs, which are not authorized by the

mortgage documents, state law, and/or not actually incurred.

### SCHEME TO RUSH TO COURT AND MAKE EXTRA MONEY FROM THE CONSUMER IN THE PROCESS OF COLLECTING DEBTS

28.    Commencing on an unknown date but not later than December 2007, and

continuing through the present, Defendants and other known and unknown co-

conspirators did knowingly and willfully devise and agree to perpetrate numerous

schemes and artifices designed to defraud borrowers of consumer loans through false,

fraudulent, and deceptive pretenses, representations, and practices.

29.    As part of this scheme, Defendants and others whose identities are not known to

Plaintiff but are known to Defendants, agreed to and did knowingly and willfully target

borrowers in default who had equity in properties secured by mortgages.

30.    In furtherance of this scheme, Chase, in concert with the other Defendants,

implemented internal systems, procedures, and policies designed to identify and refer to

third party vendor accounts with arrears associated with properties that were not "up side

down." The third party vendors would in turn refer the accounts to a regional law firm,

such as Defendant RAJC, to initiate without delay a foreclosure lawsuit and bring the

matter to a speedy decree of foreclosure.

31.    In furtherance of their scheme Defendants agreed that, when a consumer loan was

owned by a GSE (such as Fannie Mae) or an MBS trust, Defendants would conceal the

identity of the actual owner of the loan and would falsely represent that Chase was the

creditor on the loan and the owner and holder of the note.

7

32. In furtherance of their scheme Defendants agreed that, in order to conceal the identity of the creditor, cloud title to the property, and deceive the consumer and the courts, Defendants would record intervening assignments of mortgage that would ultimately name Chase as the mortgagee of record. The language of the intervening assignments alleged that each assignment was the result of a bona fide sale of the promissory note for valuable consideration, when in fact the intervening assignments never sold, conveyed, or transferred any ownership rights in the promissory note or underlying debt to Chase. Instead, the assignments only assigned the mortgage as part of a transfer of servicing rights from one GSE approved servicer to another.

33. In furtherance of their scheme and to deceive the consumer and the courts Defendants agreed not to include in complaints and other court filings the entirety of the promissory notes, leaving out allonges containing endorsements and assignments to the true owner of the debt.

34. Defendants further agreed that, in cases in which they did not have a copy of the promissory note, the foreclosure complaint would allege that the note had been lost or destroyed. Employees and officers of Chase, including but not limited to Defendant Cindy A. Smith, would execute a lost note affidavit alleging that Chase was the owner of the promissory note but that the note had been lost or destroyed, when in fact the note was held by a document custodian for the benefit of the actual creditor and owner.

35. In furtherance of their scheme, Defendants agreed with property management companies, including but not limited to Defendant Safeguard Properties Inc., to conduct unwarranted and unannounced home inspections, the true purpose of which was to collect the debt owed to the GSE. Defendants agreed that the "inspector" would seek to pressure

8

the borrower to pay the debt. Defendants agreed that if the borrower was not at home the "inspector" would leave in conspicuous places notices publicizing the delinquency of the borrower's account. Plaintiff believes and hereby alleges that the reason for such actions was to harass, oppress, embarrass, and/or abuse the borrower.

36.     In furtherance of their scheme, Defendants agreed to assess fees for inspections, maintenance, court costs, and the like that were not actually incurred, necessary, or authorized by the mortgage contracts.

37.     Plaintiff believes and hereby alleges that Defendants' scheme capitalized on contractual provisions in standardized GSE mortgage documents that permit a Lender to undertake and pay for preservation and maintenance services and repairs "reasonable or appropriate to protect the Lender's interest in the property and rights under the security instrument."

38.     Plaintiff believes and hereby alleges that the scheme's purpose was to permit Defendants and their co-conspirators to obtain a quick foreclosure decree on real property with equity and to assess significant, unauthorized "corporate advances" which would be collected at redemption, reinstatement, payoff, or sale of the property.

## THE KLIE MATTER

39.     On or about 25 August 2003 Charles W. Klie purchased a residential property located at 2498 Bristol Rd in Upper Arlington, OH. To secure the purchase price for his residence Mr. Klie executed one or two promissory notes[1] for the benefit of Coldwell Banker Mortgage Corporation [hereinafter Coldwell Banker] secured by a mortgage executed by Charles and Deborah Klie. On 3 September 2003, upon the recordation of

---

[1] A dispute exists as to whether Ms. Deborah Klie, Mr. Klie's wife at the time, co-signed a note. This dispute is not relevant to the claims asserted herein.

the mortgage, Coldwell Banker sold the Klie promissory note to the Federal National Mortgage Corporation [hereinafter "Fannie Mae"]. As required by Fannie Mae's Sale and Servicing Guides Coldwell Banker executed a notarized assignment of mortgage and note for the benefit of Fannie Mae. As the parties intended, the sale of the Klie promissory note constituted an arms-length full and absolute sale pursuant to which Coldwell Banker sold and assigned to Fannie Mae all of its rights and interests with respect to the note.

40.     The assignment to Fannie Mae was never recorded. Coldwell Banker remained the servicer of the Klie loan and the mortgage nominee on record until 30 October 2007.

41.     On no later than 19 October 2007 Coldwell Banker sold and/or transferred its servicing rights with respect to the Klie loan to JP Morgan Chase Bank [hereinafter JP Morgan].

42.     Plaintiff believes and hereby alleges that no ownership rights with respect to the Klie note where acquired when JP Morgan received servicing rights from Coldwell Banker.

43.     Pursuant to Fannie Mae's requirements, Coldwell Banker assigned its servicing rights to JP Morgan by executing an assignment of mortgage. At the same time JP Morgan executed a corresponding assignment of mortgage to Fannie Mae. JP Morgan recorded the intervening assignment from Coldwell Banker on 30 November 2007. The assignment form JP Morgan to Fannie Mae was never recorded.

44.     On 1 November 2007 Chase assumed the day to day servicing rights of the Klie loan on behalf of JP Morgan. Mr. Klie had no arrears with Coldwell Banker. Mr. Klie was credited with timely payments for the months of November and December 2007 and January 2008.

45.     Plaintiff believes and hereby alleges that Mr. Klie mailed his monthly payment in the amount of $628.00 for the month of February 2008 in the last week of January 2008.

46.     Mr. Klie died suddenly on 31 January 2008. At the time of his death he had no arrears on his loan and was not in default.

47.     On 11 February 2008 Ms. Susan Klie, Mr. Klie's sister, notified Chase of Mr. Klie's death. A Chase customer service representative advised Ms. Klie to fax the death certificate and proof of appointment of fiduciary to Chase's assumption department in order to facilitate the assumption of the loan by the fiduciary of Mr. Klie's estate.

48.     On or about 24 April 2008 Chase received the requested death certificate and power of appointment of co-fiduciaries for Mr. Klie's estate. No assumption of loan/mortgage was ever processed.

49.     On or about 24 April 2008 the fiduciaries for the estate advised Chase that all debts of Mr. Klie would be handled through the probate proceedings by the fiduciaries under the jurisdiction of the probate court in Franklin county.

50.     No creditor claim relating to the Klie loan pursuant to ORC §2117.06 was ever filed with the probate court. No creditor claim relating to the Klie loan was ever made to the fiduciaries. On 31 July 2008 the time for making any such creditor claims lapsed. As of said date all unsecured debts not asserted by a creditor are barred and extinguished by operation of law.

51.     On 16 May 2008 Chase, in its capacity as subservicer for JP Morgan, referred this matter to Defendant RACJ to initiate foreclosure proceedings.

52.     On 2 June 2008 RACJ prepared an assignment of mortgage from JP Morgan purporting to sell, convey, and transfer all rights and interests in the Klie promissory note

*11*

and the mortgage securing it to Chase. At the time the assignment from JP Morgan to Chase was executed and recorded the Klie loan was in default.

53.     At the time the assignment form JP Morgan to Chase was executed and recorded the debt evidenced by the promissory note was still owned by Fannie Mae and held by a designated custodian for the exclusive benefit of Fannie Mae.

54.     Plaintiff believes and hereby alleges that on 2 June 2009 Chase acquired the status of a debt collector as defined by FDCPA.

55.     On 5 June 2008 Defendants filed a foreclosure action in Franklin County Court of Common Pleas (08CVE0608151) claiming to be the holder and owner of a promissory note signed by Mr. Charles W. Klie by virtue of assignments from Coldwell Banker to JP Morgan and from JP Morgan to Chase. The complaint alleges that the original note had been lost or destroyed. The complaint contains a validation notice pursuant to section 809 of the FDCPA stating that Chase is the creditor to whom the debt is owed. The complaint and its attachments deliberately and fraudulently conceal the fact that Fannie Mae, and not Chase, is the owner of the promissory note and thus the creditor, and that the note was neither lost nor destroyed but rather being held by a designated custodian for the benefit of Fannie Mae.

56.     The complaint named Plaintiff Lawrence Glazer as a defendant in the foreclosure action.

57.     On or about 13 June 2008 Chase returned three checks, totaling $3,143.45, that had been mailed by the fiduciary of Mr. Klie's estate to bring the account current.

58.     Service of the complaint and its attachments was effected by delivery to Plaintiff on 17 June 2008.

59.     On 7 July 2008, within 30 days of receipt of the notice pursuant to section 809 of the FDCPA, Plaintiff notified Defendants Chernek and RACJ in writing that Plaintiff disputed the validity of the debt and requested verification of the debt.

60.     Defendants did not provide verification of the debt and did not provide the identity of the creditor to Plaintiff before continuing collection activities.

61.     Plaintiff filed an answer to the complaint and asserted affirmative defenses.

62.     On 25 July 2008 the Probate Court approved the transfer of the 2498 Bristol Rd. property to Plaintiff as a beneficiary distribution under Mr. Klie's will.

63.     On 26 August 2008 Defendants filed an amended complaint for foreclosure naming an additional party defendant. Defendants did not identify Fannie Mae as the owner of the note and the creditor for the debt they sought to collect. Defendants again fraudulently represented that Chase was the holder and owner of the note and that the note had been lost or destroyed.

64.     Plaintiff filed an answer to the amended complaint and asserted affirmative defenses

65.     On 26 November 2008 Defendants responded to discovery requests propounded by Plaintiff and included copies of the first three pages of a note allegedly signed by Charles W. Klie. The attached note contains the following undated endorsement:

WITHOUT RECOURSE
PAY TO THE ORDER OF

*Michelle Krause*
Cendant Mortgage Corporation
Michelle Krause, Vice President

66. In the same discovery response Chase, RACJ, and Mr. Chernek represented that the whereabouts of the original note were unknown.

67. On 18 December 2008 Defendants filed a motion for summary judgment. Defendants attached the first three pages of the Klie note to the motion and fraudulently represented in the motion and in the attached supporting affidavit that Chase was the owner and holder of the original Klie note and that the copy of the attached note was a true and complete copy of the original document in their possession.

68. Chase's officer and employee Beth Cottrell represented that the amount of the debt owed to Chase had "a principal balance of $58,330.28 with interest thereon at the rate of 5.674% per annum from January 1, 2008 and that this account has been and remains in default." Mr. Chernek asserted in the motion for summary judgment that "there has been a default of payment of the Note from February 1, 2008."

69. On 18 December 2008 Defendants filed a praecipe for an order of sale.

70. On 22 December 2008 the court entered a decree of foreclosure in error.

71. On 2 January 2009 Plaintiff, in response to a notice posted on the front door of the Bristol property on or about 28 December 2008, advised Chase in writing that the property was not abandoned.

72. On 7 January 2009 the Honorable Judge David Fais vacated the decree of foreclosure and ordered that Defendants produce for inspection the original note by 31 January 2009.

73. Defendants allowed Plaintiff to view the note on 20 March 2009. Upon viewing the note Plaintiff discovered that an affidavit of name/signature and the 3 September

2003 notarized assignment to Fannie Mae were attached to and made part of the promissory note allegedly signed by Mr. Klie.

74.     Defendants caused the Bristol property to be advertised and scheduled for a sheriff's sale on 10 April 2009, notwithstanding that the contested foreclosure proceedings were ongoing.

75.     On 5 March 2009 the Court of Common Pleas ordered the withdrawal of the sale after having been "advised that the Plaintiff does not wish to have the property sold at this time."

76.     On 13 April 2009 Plaintiff, in response to a notice left on the front door of the Bristol property by Defendants, provided written proof of insurance for the property and requested that all correspondence and notices be sent to Plaintiff at his California address.

77.     On 21 April 2009 Defendant Safeguard Properties, Inc. forcefully broke into the Bristol property through the side door and entered the premises without authorization. While on the premises Defendants and their employees, agents, and/or subcontractors "winterized" the bathroom, damaged the floor, damaged the furnace and other fixtures, sifted through and moved personal property belonging to Plaintiff and Mr. Klie's estate, changed the lock on the side door, placed a combination lock box on the door, and shut-off utilities. Defendants also pinned the following notice in the great room of the house:

> This sign in sheet is posted by Safeguard Properties, Inc. as a request of the mortgagee to track all persons entering the property. It is required that all persons entering this property provide an explanation of their visit and sign and date this form.

78.     Since 5 June 2008 Defendants have made numerous visits to the Bristol property and have affixed to the front door assorted notices, including delinquent status notices, warning notices, and sheriff sale notices, fully aware that the borrower was deceased and

15

the title owner resided in California. Plaintiff believes and hereby alleges that said notices, and the manner in which they were posted, were intended to embarrass, oppress, harass, and abuse Plaintiff.

79.     The contested foreclosure matter is still pending. Plaintiff does not seek a review or adjudication of any issues pertaining to the state foreclosure action pending before the state court.

80.     The debt Defendants seek to collect from Plaintiff arises out of a transaction that was intended and used for personal, family, and household purposes when contracted.

81.     All debts Defendants seek to collect from one or more classes of individuals similarly situated to Plaintiff arose from transactions for personal, family, and household purposes.

### FIRST CAUSE OF ACTION
VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(Against all Defendants)

### Count I: Harassment or Abuse

82.     Plaintiff incorporates by reference all the foregoing paragraphs.

83.     On numerous occasions in connection with the collection of debts owed another and/or debts in default when obtained, Defendants have engaged in conduct the natural consequence of which was to harass, oppress, or abuse a person, in violation of Section 806 of the FDCPA, 15 U.SC §1692d, including but not limited to using or threatening to use force or other criminal means to harm the reputation and property of a person.

84.     Specifically, on or about 21 April 2009, Defendants and their employees, subcontractors, and/or agents, intentionally and deliberately committed an unlawful breaking and entering into the residence located at 2498 Bristol Rd, Upper Arlington, OH

43221, "winterized" the bathroom, damaged the floor, damaged the furnace and other fixtures, sifted through and moved personal property belonging to Plaintiff and Mr. Klie's estate, changed the lock on the side door, placed a combination lock box on the door, and shut-off utilities. All such acts were done with the following knowledge: the property was not abandoned; the property was the subject of a contested foreclosure proceeding; no decree of foreclosure had been entered; no sale had been confirmed; and that Defendants had no present statutory or contractual right of possession of the property.

85.    The acts described in paragraph 84 were committed through the use of force, violence, and/or criminal means.

86.    The acts described in paragraph 84 were done with malice and for the purpose of harassing, annoying, and pressuring the title owner of the property to pay off a debt Defendants were attempting to collect.

87.    The acts described in paragraph 84 resulted in harm to the reputation and property of Plaintiff.

88.    Plaintiff believes and hereby alleges that the acts described above comprise a part of a pattern and practice of violations committed by Defendants against similarly situated individuals.

**Count II: False or Misleading Representations**

89.    Plaintiff incorporates by reference all the foregoing paragraphs.

90.    On numerous occasions in connection with the collection of debts owed another and/or debts in default when obtained, Defendants have used false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. §1692e, including but not limited to the following:

   a.  Falsely representing the character, amount, legal status and/or ownership of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt, in violation of Sections 807(2)(A) and (B) of the FDCPA, 15 U.S.C. §1692e(2)(A) & (B).

   b.  Using false representations or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer, in violation of Section 807(10) of the FDCPA, 15 U.S.C. §1692e(10) .

91.  Specifically, as this claim relates to the named Plaintiff, Defendants falsely represented the character, amount, legal status, and ownership of the debt they were attempting to collect through the following representations:

   a.  On 5 June 2008 Defendants Chase, RACJ, and Mr. Chernek filed and caused to be served on Plaintiff a complaint for foreclosure falsely representing that Chase owns and holds a note the whereabouts of which were unknown to Defendants and that the Klie loan was in default since 1 January 2008.

   b.  On 5 June 2008 Defendants Chase, RACJ, and Mr. Chernek filed and served on Plaintiff a Fair Debt Collection Practices Act notice of validation falsely claiming that Chase was the creditor of the debt described in the foreclosure complaint.

   c.  On 11 June 2008 Defendants caused Defendant Cindy A. Smith to sign and file a lost note affidavit with the Franklin County Court of Common Pleas falsely representing that the original note signed by Mr. Klie had been lost or destroyed; that the note could be accelerated upon default on any installment without further notice to the borrower; and that the mortgage note was assigned to Chase.

d.  On 30 June 2008 Defendants Chase, RACJ, and Mr. Chernek made a

reinstatement quote demanding payment in the amount of $5,836.61, falsely

representing the amount of the debt and corporate advances owed[2].

e.  On 26 August 2008 Defendants Chase, RACJ, and Mr. Chernek filed and

served on Plaintiff an amended complaint for foreclosure falsely representing that

Chase owned and held a note the whereabouts of which were unknown to

Defendants and that the Klie loan was in default since 1 January 2008.

f.  On 26 August 2008 Defendants Chase, RACJ, and Mr. Chernek filed a Fair

Debt Collection Practices Act notice of validation falsely claiming that Chase was

the creditor of the debt described in the amended complaint.

g.  On or about 26 November 2008 Defendants Chase, RACJ, and Mr. Chernek

filed responses to admissions in which they falsely asserted that the whereabouts

of the Klie note were not known to Defendants.

h.  On 18 December 2008 Defendants Chase, RACJ, and Mr. Chernek filed a

Motion for Summary Judgment and attachments falsely representing that a three

page note allegedly signed by Charles W. Klie represents a true and accurate copy

of the original instrument they owned and held and that the Klie account was in

default from either 1 January 2008 or 1 February 2008.

i.  On 25 March 2009 Defendants Chase, RACJ, and Mr. Gormley filed a reply

brief in which they falsely represented that JP Morgan assigned the mortgage,

together with any applicable note, to Chase on 2 June 2008; that the whereabouts

---

[2] Plaintiff respectfully requests that this Court take judicial notice of the court docket and
pleadings in civil case 08 CVE0608151 currently pending before the Franklin County
Ohio Court of Common Pleas.

of the note were still unknown at the time of the filing of the amended complaint; that after the amended complaint was filed but before filing its motion for summary judgment Chase located the original note; that the note attached to their Motion for Summary Judgment is a complete copy of the instrument; and that all applicable assignments have been attached and disclosed to Plaintiff and the court.

j.    On 25 March 2009 Defendants Chase, RACJ, and Mr. Gormley falsely represented that the last payment made by Mr. Klie had his account current through 1 January 2008; that no other payments were made; and that the note was accelerated on 3 April 2008.

92.    The acts described in paragraph 91 constitute false, misleading, and/or deceptive representations and means. Defendants made said representations with knowledge of their falsity or with such utter disregard and recklessness as to whether they were true or false that knowledge may be inferred,

93.    The acts described in paragraph 91 constitute false and/or misleading representations with respect to material facts.

94.    The acts described in paragraph 91 were done intentionally and maliciously in order to deceive Plaintiff and the court; to conceal Chase's status as a debt collector rather than a creditor; and to limit the application of the FDCPA to Defendants.

95.    The acts described in paragraph 91 were done for the purpose of collecting a debt owed another and obtained by Defendants when the debt was already in default.

96.     Plaintiff believes and hereby alleges that the acts described above comprise a part

of a pattern and practice of violations committed by Defendants against similarly situated

individuals.

### Count III: Unfair Practices

97.     Plaintiff incorporates by reference all the foregoing paragraphs.

98.     On numerous occasions in connection with the collection of debts owed another

and/or debts in default when obtained, Defendants have used unfair or unconscionable

means to collect or attempt to collect a debt, including but not limited to the following:

(1) collecting amounts (including interest, fees, charges, or expenses incidental to the

principal obligation) not authorized by the agreement creating the debt or permitted by

law, in violation of Section 808(1) of the FDCPA, 15 USC §1692f(1); (2) taking or

threatening to take non-judicial actions to effect dispossession or disablement of a

property when Defendants did not have a present right to possession of the property as

collateral through an enforceable security interest, in violation of Section 808(6) of the

FDCPA, 15 USC §1692f(6); and (3) communicating with the consumer regarding a debt

by posting notices on conspicuous locations meant to attract the attention of third parties

such as neighbors and passers-by, a violation akin to the practices prohibited in section

808(7), 15 USC §1692f(7).

99.     Specifically, as this claim relates to the named Plaintiff, on 30 June 2008

Defendants demanded the sum of $5,838.61 representing accumulated payments due

from 2/1/2008 to 3/1/2008 for a subtotal of $3,772.14, late charges of $110.22, property

inspection/maintenance of $59, and unspecified foreclosure expenses from 5/16/2008 to

6/30/2008 in the amount of $1,894.23.

100.    A portion of the money Defendants attempted to collect was not due; a portion constituted fees not permitted by law and/or contractual agreement; and a portion constituted expenses not actually incurred by Defendants.

101.    On 30 June 2008 Defendants demanded that all payments remitted to Chase be in certified funds or money order despite the fact that no such restriction was authorized by the contractual agreement.

102.    Plaintiff believes and hereby alleges that this restriction on payments was instituted and imposed by Defendants in order to limit borrowers' ability to have proof of payment and to track the proper allocation of funds remitted to their accounts.

103.    On or about 21 April 2009 Defendants, without a court order and in violation of law, asserted actual possession of and disabled the Bristol property.

104.    Plaintiff believes and hereby alleges that Defendants committed the actions referenced in paragraph 103, and detailed in paragraph 84, with malice and with knowledge that no present right to possession had vested in Chase.

105.    On numerous occasions Defendants posted conspicuous notices on the front door of the Bristol property alleging that the property was vacant; that the owner was delinquent on a consumer debt; and threatening to take non-judicial actions to effect dispossession of the property.

106.    At all time such notices were posted Defendants knew that the record mortgagor and prior owner was deceased; that the property was a probate asset until 26 July 2008; that the property was not abandoned; that the present title owner of the property resided in California; and that the property was undergoing mold remediation.

107.    Plaintiff believes and hereby alleges that said notices were posted during on-site visits by Defendants, their employees, subcontractors, and/or agents, for the purpose of collecting a debt and assessing "corporate advances" not permitted by the mortgage contract.

108.    Plaintiff believes and hereby alleges that the visits were not supported by substantial cause for inspection and/or maintenance designed to protect a mortgagee's beneficial interest in the property.

109.    All acts described above constitute unfair debt collection practices.

110.    Plaintiff believes and hereby alleges that the acts described above form part of a pattern and practice of violations committed by Defendants against similarly situated individuals.

### Count IV: Validation of Debts

111.    Plaintiff incorporates by reference all the foregoing paragraphs.

112.    On numerous occasions in connection with the collection of debts owed another and/or debts in default when obtained, Defendants have continued collection activities despite having been notified that the consumer disputes the debt or a portion of the debt and without having obtained a verification of the debt as required by section 809(b) of the FDCPA, 15 USC §1692g(b).

113.    Specifically as this matter pertains to the named Plaintiff, Defendants continued with their collection activities despite having been advised in writing by Plaintiff that he disputed the debt within 30 days of receiving the initial communication in the form of the civil complaint filed under docket 08 CVE 0608151.

114.    Until 20 March 2009 Defendants deliberately and maliciously withheld the full copy of the promissory note allegedly signed by Charles W. Klie.

115.    Until 20 March 2009 Defendants withheld the identity of the actual creditor, Fannie Mae.

116.    From 7 July 2008 until 20 March 2009, without verifying the debt, Defendants continued collection activities and performed the following unauthorized acts: (1) requested payments; (2) filed pleadings to obtain a foreclosure decree; (3) appraised the property; and (4) advertised the property for a sheriff sale.

117.    Plaintiff believes and hereby alleges that the acts described above form part of a pattern and practice of violations committed by Defendants against similarly situated individuals.

118.    As a result of the acts described above Plaintiff suffered embarrassment, grief, annoyance, loss of reputation, delays and losses in remediating and renovating the Bristol property, and incurred significant expenses to defend and remedy Defendants' unlawful actions.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF OHIO FAIR DEBT COLLECTION PRACTICES ACT
(Against Chase Home Finance)

119.    Plaintiff incorporates by reference all the foregoing paragraphs.

120.    Through its actions Chase violated the Ohio Fair Debt Collection Practices Act (ORC. §1319.12. et seq.). Defendants' violations of the state act include but are not limited to the following:

a. Chase violated §1319.12 by bringing a foreclosure action against Plaintiff in its own name without being a collection agency as defined by Section 1319.12(A)(2)

24

b. Chase violated §1319.12 by engaging in the business of collecting debts and by attempting to collect alleged debts within the State of Ohio in its own name without being a collection agency as defined by section 1319.12(A)(2)

c. Chase attempted to collect a debt and commenced litigation in its own name against Plaintiff for the collection of an assigned account without first obtaining a voluntary and properly executed assignment of indebtedness from Fannie Mae transferring title in the account and/or indebtedness allegedly in default and without a written agreement as required by ORC §1319.12(C)(1) &(3).

121.    Defendants' acts as described above were done intentionally for the purpose of coercing Plaintiff to pay the alleged debt.

122.    As a result of the above violations of the state act the Defendants are liable to Plaintiff for injunctive and declaratory relief and for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

## THIRD CAUSE OF ACTION
### CONSPIRACY
(Against all Defendants)

123.    Plaintiff incorporates by reference all the foregoing paragraphs.

124.    On an unknown date but not later than December 2007 Defendants, and other known and unknown persons, knowingly and willfully conspired to defraud individuals through the 'rush to court and collect from the borrowers' scheme described in paragraphs 28 through 36.

125.    As part of the conspiracy, Defendants made false and fraudulent pretenses, representations, and promises regarding debts they were attempting to collect, to wit: (1) Defendants falsely alleged that Chase was the owner and holder of promissory notes

secured by recorded mortgages properly and lawfully assigned to Chase; (2) Defendants fraudulently concealed material facts pertaining to the status, amount, ownership, and source of the debts; (3) Defendants assessed and attempted to collect charges, fees, and expenses not actually incurred or incurred without authorization; (4) Defendants sought to assert and unlawfully asserted actual possession over and disabled property belonging to Plaintiff and similarly situated individuals without having the statutory or contractual right to do so; (5) Defendants attempted to collect on debts through the use of force, fraud, oppression, and/or coercion.

126.    As part of the conspiracy and as pertains to the named Plaintiff, on or about 5 June 2008 and on 26 August 2008 Defendants and their co-conspirators caused to be filed a foreclosure complaint and amended complaint against Plaintiff seeking to collect on a debt owed another without disclosing the identity of the actual creditor and owner of the promissory note allegedly secured by a recorded mortgage.

127.    As part of the conspiracy and through false and fraudulent pretenses, representations, and promises, Defendants and their co-conspirators sought to circumvent the probate court jurisdiction and side-step the requirement for asserting a creditor claim against the estate of the deceased in an attempt to induce and/or coerce Plaintiff to pay off a debt not owed by Plaintiff and to pay for "corporate advances" Defendants were not entitled and/or authorized to collect.

128.    As part of the conspiracy, on or about 21 April 2009 Defendants wrongfully and in violation of state law asserted actual possession and control over Plaintiff's real property, damaged Plaintiff's property, intentionally interfered with Plaintiff's enjoyment

of the property, and intentionally interfered with contracts relating to the improvement of the property.

129.    Defendants and each of them did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and the above-alleged conspiratorial agreement.

130.    Plaintiff believes and hereby alleges that the last overt act in furtherance of the above-described conspiracy occurred on or about 21 April 2009, at which time Defendants took deliberate actions to frustrate Plaintiff's enjoyment of his property rights by deliberately and fraudulently claiming the present right to enter and possess the Bristol property.

131.    As a proximate result of the wrongful acts herein alleged Defendants caused Plaintiff to suffer monetary damages, loss of business opportunity, loss of reputation, loss of enjoyment of property rights, anguish, and emotional distress.

132.    In doing the things herein alleged Defendants acted willfully and with the intent to cause injury to Plaintiff. Defendants were therefore guilty of malice, oppression, *and/or* fraud in conscious disregard of Plaintiff's rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

## FOURTH CAUSE OF ACTION
### INTENTIONAL MISREPRESENTATION OF MATERIAL FACTS
(Against All Defendants)

133.    Plaintiff incorporates by reference all the foregoing paragraphs.

134.    On numerous occasions, including but not limited to 5 June 2008, 11 June 2008, 26 August 2008, 26 November 2008, 18 December 2008, 22 December 2008, 28 December 2008, 25 March 2009, and 21 April 2009, Defendants and its employees,

agents, and subcontractors, acting in furtherance of their individual and/or financial advantage, in concert with the other Defendants, and pursuant to the above described conspiracy to defraud, represented to Plaintiff that Chase is a creditor pursuant to section §1692(a)(6) and the owner and holder of a promissory note evidencing a consumer debt for which Plaintiff was responsible.

135.    On numerous occasions, including but not limited to 5 June 2008, 11 June 2008, 26 August 2008, 26 November 2008, and 25 March 2009, Defendants and its employees, agents, and subcontractors, acting in furtherance of their individual and/or financial advantage, in concert with the other Defendants, and pursuant to the above described conspiracy to defraud, represented to Plaintiff that the promissory note on which Chase sought to collect had been lost or destroyed and that its whereabouts were unknown.

136.    The representations described above were in fact false when made by Defendants. The true facts were as follows: (1) at all times relevant to this complaint Fannie Mae, not Chase, owned and held the promissory note allegedly signed by Charles W. Klie though an unconditional sale from Coldwell Banker consummated on 3 September 2003; (2) the promissory note, with its attachments, was held by a designated custodian for the benefit of the true owner; and (3) Chase was a servicer and/or subservicer for Fannie Mae from 1 November 2007 until 2 June 2008 with respect to the Klie loan and a debt collector thereafter.

137.    The representations described above were made with the knowledge, acquiescence, and/or at the direction of all Defendants and in furtherance of their existing conspiracy.

138.    The representations described above were material to the matter asserted.

139.   When Defendants made these representations, they knew them to be false; Defendants made these representations with the intention of deceiving and defrauding Plaintiff and inducing Plaintiff to act in reliance on these representations.

140.   Plaintiff, at the time these representations were made, was ignorant of the falsity of Defendants' representations and believed them to be true.

141.   Plaintiff acted to his detriment in justifiable reliance on the material misrepresentations uttered by Defendants. Had Plaintiff known the true facts, he would not have taken such actions. Plaintiff's reliance was justified under the circumstances.

142.   As a proximate result of the wrongful acts herein alleged Defendants caused Plaintiff to suffer monetary damages, loss of business opportunity, loss of reputation, anguish, and emotional distress.

143.   The aforementioned conduct of Defendants constituted an intentional material misrepresentation, depriving Plaintiff of property and legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights so as to justify an award of exemplary and punitive damages.

### FIFTH CAUSE OF ACTION

#### NEGLIGENT MISREPRESENTATION OF MATERIAL FACTS
(Against all Defendants)

144.   Plaintiff incorporates by reference all the foregoing paragraphs.

145.   When Defendants made the representations referenced in paragraphs 134 and 135 they had no reasonable ground for believing them to be true, in that at all times the Defendants knew that their representations were made to further the existing conspiracy.

146. Defendants made the representations referenced in paragraphs 134 and 135 with the knowledge, acquiescence, and/or at the direction of all Defendants.

147. Defendants made these representations with the intention of inducing Plaintiff to act in reliance on these representations, or with the expectation that Plaintiff would so act.

148. As a proximate result of the wrongful acts herein alleged Defendants caused Plaintiff to suffer monetary damages, loss of business opportunity, loss of reputation, anguish, and emotional distress.

## SIXTH CAUSE OF ACTION
### CONCEALMENT OF MATERIAL FACTS
(Against All Defendants)

149. Plaintiff incorporates by reference all the foregoing paragraphs.

150. On or about 5 June 2008, 26 August 2008, and 26 November 2008, Mr. Chernek represented to Plaintiff that Chase is a creditor pursuant to section §1692(a)(6)and the owner and holder of a note executed by Charles W. Klie which had been lost, but deliberately failed to reveal and suppressed the fact that the note was owned by Fannie Mae and was held by a third party for the benefit of Fannie Mae.

151. On 11 June 2008 Ms. Cindy A. Smith, an employee of Chase, represented to Plaintiff that the Klie note had been lost or destroyed and its whereabouts were unknown despite diligent efforts to locate it, but deliberately failed to reveal and suppressed the fact that the note was owned by Fannie Mae and was held by a third party for the benefit of Fannie Mae.

152. On 25 March 2009 Mr. Gormley falsely represented to Plaintiff that JP Morgan assigned the mortgage, together with any applicable note, to Chase on 2 June 2008; that

the whereabouts of the note were still unknown at the time the amended complaint was filed; that after the amended complaint was filed but before the filing of its motion for summary judgment Chase located the original note; that the note attached to their motion for summary judgment was a complete copy of the instrument; and that all applicable assignments had been attached and disclosed to Plaintiff and the court. Mr. Gormley deliberately failed to reveal and suppressed the fact that the note was sold to Fannie Mae on 3 September 2003 and that a notarized assignment for value was executed on said date; that no ownership rights over the note were ever sold, transferred, or assigned to Chase; that prior to January 2009 the original note was held by a custodian for the benefit of Fannie Mae; and that the whereabouts of the note were known at all times.

153.    The representations and concealment of information herein alleged to have been made by Defendants Chernek, Smith, and Gormley, as agents of the other Defendants, were made with the intent to induce Plaintiff to act and in reliance thereon. The representations and the suppression of information herein alleged were done in furtherance of the conspiracy alleged in this complaint.

154.    Plaintiff, at the time these failures to disclose and suppressions of facts occurred, was ignorant of the existence of the facts that Defendants suppressed and justifiably relied on the representations to his detriment.

155.    As a proximate result of the wrongful acts herein alleged Defendants caused Plaintiff to suffer monetary damages, loss of business opportunity, loss of reputation, anguish, and emotional distress.

156.    The aforementioned conduct of Defendants Chernek, Smith, and Gormley, as agents of the other Defendants, constitutes a concealment of material facts depriving

Plaintiff of property and legal rights or otherwise causing injury, and was despicable

conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of

Plaintiff's rights so as to justify an award of exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION
### TRESPASS
(Against Safeguard Properties, Inc.)

157.    Since 25 July 2008 Plaintiff has been the title owner and in possession of a real

property, consisting of land and a single family dwelling with improvements and personal

property, located at 2498 Bristol Rd., Upper Arlington, OH 43221 and more particularly

described as follows:

> Being Lot Number Twenty-Four (24), in Block Number Nineteen (19), excepting
> therefrom Two (2) feet in width off the entire west side thereof, and excepting
> therefrom Two (2) feet in width off the entire east side thereof in THE
> ARLINGTON REALTY COMPANY'S RIVER RIDGE SUBDIVISION, as the
> same is numbered and delineated upon the recorded plat thereof, of record in Plat
> Book 19, page 2, 3, and 4, Recorder's Office, Franklin County, Ohio. Parcel
> number 070-006495.

158.    The title transfer was approved and ordered by the Franklin County Probate Court

as a distribution in kind under the will of Mr. Charles W. Klie and contains no reference

or notation pursuant to ORC §2117.29.

159.    On or about 21 April 2009 Defendant Safeguard Properties Inc. wrongfully and

unlawfully entered the above described premises, "winterized" the bathroom, damaged

the floor, damaged the furnace and other fixtures, sifted through and moved personal

property belonging to Plaintiff and Mr. Klie's estate, changed the lock on the side door,

placed a combination lock box on the door, shut-off utilities, and posted a notice on the

wall stating as follows:

> This sign in sheet is posted by Safeguard Properties, Inc. as a request of
> the mortgagee to track all persons entering the property. It is required that
> all persons entering this property provide an explanation of their visit and
> sign and date this form.

160.    As a proximate result of the entry of and damage to the interior and improvements

of the dwelling, Plaintiff's property was damaged to such an extent that repairs will be

necessary to restore the interior and improvements within the dwelling to their prior

condition.

161.    As a further proximate result of Defendant's entry onto Plaintiff's land and

dwelling and forcible and unauthorized intrusion and viewing of Plaintiff's personal

property, Plaintiff suffered embarrassment, discomfort, and annoyance and experienced

mental suffering caused by fear for the safety of the real and personal property. As a

result of this mental distress, Plaintiff has suffered general damages.

162. The aforementioned acts of Defendant were willful and oppressive, or fraudulent, or

malicious, in that Defendant forcibly entered the property, damaged fixtures and

improvements, disabled the property, and intruded on Plaintiff's privacy and personal

property, all with knowledge that Plaintiff had title, possession, and control of the

property; that the property was not abandoned; and that the property was in the process of

being remediated by contractors. Defendant acted in conscious disregard of Plaintiff's

proprietary rights, privacy, safety, and mental well being: Plaintiff is thus entitled to

punitive damages.

163.    Defendant's wrongful conduct in maintaining a key box and unrestricted access to

the dwelling will cause ongoing injury to the property, will interfere with Plaintiff's

completion of the remediation and renovation work, and will deprive Plaintiff of the

peace of mind of a safe, secure dwelling.

164.    Plaintiff has no adequate remedy at law for the injuries currently suffered in that Defendant will continue to maintain means and access to the property unless restrained by this Honorable Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

CAUSES OF ACTION ONE AND TWO

A.    Declaratory judgment that Defendants' conduct violated the FDCPA, and declaratory and injunctive relief for the Defendants' violations of the state act;

B.    Actual damages, the exact amount to be determined at trial and according to proof;

C.    Statutory damages pursuant to 15 U.S.C. §1692k.

E.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1692k

F.    For such other and further relief as may be just and proper.

CAUSES OF ACTION THREE, FOUR, FIVE, SIX, AND SEVEN

A.    Compensatory damages, including special damages, the exact amount to be determined at trial and according to proof;

B.    Interest as allowed by law;

C.    Punitive damages;

D.    Reasonable attorney's fees;

E.    Together with all costs and expenses, and such other further relief as the Court deems proper.

F.     For a temporary restraining order, a preliminary injunction, and a permanent

injunction, all enjoining Defendant Safeguard Properties Inc. and its agents, servants, and

employees, and all persons acting under, in concert with, or on its behalf, from continuing

to trespass on Plaintiff's land and dwelling and maintaining a key box allowing unlimited

and unrestricted access to the property.

Respectfully Submitted by

Nicolette Glazer Esq.
(PRO HAC VICE APPLICATION TO BE FILED)
LAW OFFICES OF LARRY R GLAZER
1875 Century Park East #700
Century City, CA 90067

Attorney for PLAINTIFF

## JURY DEMAND

Plaintiff hereby exercises and invokes his right to a jury trial.

Respectfully Submitted by

Nicolette Glazer Esq.
(PRO HAC VICE APPLICATION TO BE FILED)
LAW OFFICES OF LARRY R GLAZER
1875 Century Park East #700
Century City, CA 90067

Attorney for PLAINTIFF

35

## PROSPECTIVE CLASS CERTIFICATION

Plaintiff believes and hereby alleges that the pattern and practice of violations described

in this complaint may be typical and representative of the claims of other similarly

situated individuals. Plaintiff reserves the right to seek a class action certification if, upon

conducting limited discovery to ascertain the suitability of the proposed class, such

proposed class member is actionable under Rule 23.

Respectfully Submitted by

Nicolette Glazer Esq.
(PRO HAC VICE APPLICATION TO BE FILED)
LAW OFFICES OF LARRY R GLAZER
1875 Century Park East #700
Century City, CA 90067

Attorney for PLAINTIFF

*36*