**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LAWRENCE R. GLAZER, *individually and on behalf of all similarly situated individuals*, | CASE NO. 1:09-cv-01262 |
| | JUDGE CHRISTOPHER A. BOYKO |
| Plaintiffs, | MAGISTRATE JUDGE GREG WHITE |
| v. | |
| CHASE HOME FINANCE LLC, *et al.*, | **REPORT AND RECOMMENDATION** |
| Defendants. | |

On November 20, 2009, this matter was referred to the Magistrate Judge from District Court Judge Boyko, pursuant to Local Rule 72.1, seeking a report and recommendation for disposition of case-dispositive motions.[1] (Doc. No. 52.)

### I. Procedural Background

**A. The Complaint**

Plaintiff Lawrence Glazer (hereinafter "Glazer"), individually and on behalf of all others similarly situated, filed his Complaint on June 2, 2009. (Doc. No. 1.) Glazer's individual claim revolves around a piece of residential property located at 2498 Bristol Road, Upper Arlington, Ohio. (Compl. ¶¶21-39.) Glazer alleges that said property was purchased by Charles W. Klie

---

[1] This matter was also referred for general pretrial supervision and to enter and enforce pretrial orders including, but not limited to, orders pertaining to discovery matters. (Doc. No. 52.)

("Klie") and financed through Coldwell Banker Mortgage Corporation (hereinafter "Coldwell Banker").[2] Coldwell Banker assigned both the note and the mortgage related to the Bristol property to Fannie Mae, but that assignment was never recorded. (Compl. ¶¶39-40, 73; Doc. No. 34, Exh. B.) As a result, Glazer asserts that subsequent assignments from Coldwell Banker to J.P. Morgan Chase, and thereafter to Defendant Chase Home Finance, LLC (hereinafter "Chase"), assigned only servicing rights despite purporting to assign both the relevant note and mortgage. (Compl. ¶42-43; Doc. No. 18, Exhs. A & B.) Thus, it is Glazer's position that Chase had no ownership interest in the mortgage or the corresponding note; and, therefore, its representations and actions while attempting to collect the debt owed on the property were unlawful.

Specifically, Glazer alleges the following causes of action: (1) harassment or abuse in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d, against all Defendants; (2) false or misleading misrepresentations in violation of the FDCPA, 15 U.S.C. § 1692e, by Defendants;[3] (3) unfair practices in violation of the FDCPA, 15 U.S.C. § 1692f, against all Defendants; (4) failure to validate the alleged debts owed in violation of the FDCPA, 15 U.S.C. § 1692g, against all Defendants; (5) a violation of the Ohio Fair Debt Collection Practices Act against Defendant Chase; (6) conspiracy against all Defendants; (7) intentional misrepresentation of material facts against all Defendants; (8) negligent misrepresentation of

---

[2] Klie passed away on January 31, 2008 (Compl. ¶46) and, on July 23, 2008, Klie's sister assigned her interest in the Bristol property to Glazer in return for certain assets of Klie's Estate. (Doc. No. 34, Exh. G.) On July 25, 2008, the probate court approved the transfer of the Bristol property to Glazer as a beneficiary distribution under Klie's will. (Compl. ¶62.)

[3] Count II does not contain any specific allegations with respect to Defendant Safeguard.

material facts against all Defendants; (9) concealment of material facts against all Defendants; and (10) trespassing against Defendant Safeguard Properties, Inc. (hereinafter "Safeguard").[4] (Doc. No. 1.)

**B. Motions**

On July 31, 2009, Defendant Chase filed a Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 18.) In addition, on August 7, 2009, Defendant Reimer, Arnovitz, Chernek & Jeffrey Co.[5] filed a Motion to Dismiss the Complaint. (Doc. No. 23.) Finally, on August 10, 2009, Defendant Safeguard also filed a Motion to Dismiss the Complaint.[6] (Doc. No. 25.) Thereafter, on September 9, 2009, Glazer filed an "Omnibus Memorandum in Response to Motions to Dismiss" the Complaint. (Doc. No. 32.) However, prior to filing his memorandum in opposition, Glazer filed a Motion for Leave to File an Amended Complaint.[7] (Doc. No. 30.) On September 14, 2009, Defendants Chase and Safeguard filed their Replies, followed by Defendant RACJ on September 21, 2009. (Doc. Nos. 39, 40 &

---

[4] On July 5, 2008, Chase filed a foreclosure action on the Bristol property in state court naming Glazer as a Defendant. (Compl. ¶55; Doc. No. 34, Exh. F.) This action was pending in state court at the time the instant suit was filed. However, on November 6, 2009, Chase filed a voluntary dismissal of the action without prejudice. (Doc. No. 51, Exh. A.) With this dismissal, Chase conceded that its prior abstention arguments were rendered moot. *Id*.

[5] Reimer, Arnovitz, Chernek & Jeffrey Co. (hereinafter "RACJ"), a law firm, represented Chase in the state foreclosure action.

[6] Simultaneously with their Motions to Dismiss, Defendants Chase and RACJ both filed Motions to Strike Glazer's references to a purported class or similarly situated individuals pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D), as well as Local Rule 23.19(c). (Doc. Nos. 19 & 24.) Glazer filed a brief in opposition to these motions on August 28, 2009. (Doc. No. 31.)

[7] All Defendants filed briefs in opposition to Glazer's motion for leave to file an amended complaint on September 10, 2009. (Doc. Nos. 35, 36 & 37.)

46.)

## C. Federal Jurisdiction

The FDCPA confers jurisdiction upon district courts over claims made pursuant to the Act "regardless of the amount in controversy," if the claim is brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Glazer also has asserted state law claims over which this Court has supplemental jurisdiction under 28 U.S.C. § 1367. In considering state law claims pursuant to supplemental jurisdiction, this Court must follow Ohio law. *See SuperSulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999).

## II. Civil Rule 12(b)(6) Standard

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Well-pleaded allegations must be taken as true and construed most favorably toward the non-moving party. *See, e.g., Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). Although a court may not grant a Rule 12(b)(6) motion based on its disbelief of the factual allegations contained in the complaint, *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990), a court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Consequently, a claim should not be dismissed unless it is unsupported by the law or the facts alleged are insufficient.

When ruling on motions to dismiss, a Court should normally look no further than the complaint, but "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [plaintiff's]

claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997) (citations omitted). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993). Also, [a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003) (*citing Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999)).

### III. Law and Analysis

**A. The Fair Debt Collection Practices Act ("FDCPA")**

**1. Applicable Law**

In a recent Report and Recommendation, this Court explained the purpose of the FDCPA as follows:

> Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e; *accord Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 398 (6th Cir. 1998). Congress intended the Act to eliminate unfair debt-collection practices, such as late night telephone calls, false representations, and embarrassing communications. *Lewis*, 135 F.3d at 398. The Senate Report justified the need for legislation by stating:
>
>> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

5

> Sen. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696. *Id.*

*Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914 (N.D. Ohio 2009).

Glazer alleges violations of four sections of the FDCPA: §1692d; §1692e; §1692f; and §1692g(b). (Compl. ¶¶82-118.)

In pertinent part, §1692d states as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person....

The Sixth Circuit has observed that "[c]ases from other courts of appeals bolster the conclusion that, although the question of 'whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, . . . . Congress has indicated its desire for the courts to structure the confines of § 1692d.'" *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (*quoting Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985)). As such, courts may dismiss §1692d claims as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor. *Id.* In *Smith v. Transworld Sys.*, 1997 U.S. Dist. LEXIS 23775 at **20-21 (S.D. Ohio Jul. 31, 1997), the district court observed that §1692d prohibits only "oppressive and outrageous conduct" and was "not intended to shield even the least sophisticated recipients of debt collection activities from the inconvenience and embarrassment that are natural consequences of debt collection." *Id.* (internal citations omitted). The *Smith* court noted that it would be "inconsistent" to construe §1692d "to forbid conduct that is not intended and does not naturally tend to harass, oppress or abuse." *Id.* (*citing Wright v.*

6

*Credit Bureau of Georgia, Inc.*, 548 F. Supp. 591 (N.D.Ga. 1982)).

In pertinent part, §1692e states as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of (A) the character, amount, or legal status of any debt; or . . .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

When determining whether a debt collector's practice is "deceptive," courts have applied an objective test based on the understanding of the "least sophisticated consumer." *See, e.g., Lewis*, 135 F.3d at 398 ("The use of an assigned alias or office name, even when considered from the standpoint of the least sophisticated debtor, does not misrepresent the amount of a debt, the consequences of its non-payment, nor the rights of the contacted debtor."); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992) (The contents of a collection letter were not misleading, even under the "least sophisticated consumer" standard); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332-33 (6th Cir. 2008).

In pertinent part, §1692f states as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . .

(6) Taking or threatening to take any nonjudicial action to effect dispossession or

7

>    disablement of property if--
>
>    (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
>    (B) there is no present intention to take possession of the property; or . . .

Finally, in pertinent part, §1692g(b) states as follows:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.  Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.  Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

"[T]here are no time limits for a debt collector to validate the debt under § 1692g(b) [and,] [i]n fact, §1692g(b) does not require the debt collector to validate the debt at all, as long as it ceases any collection activity." *Purnell v. Arrow Fin. Servs., LLC*, 2008 U.S. App. LEXIS 25488 (6th Cir. 2008) (*citing Transworld Sys., Inc.*, 953 F.2d at 1031)).  In other words, the debt collector may either (1) choose not to verify the debt and abandon its collection efforts, or (2) verify the debt and resume collection activities once the requested validation has been provided. *Id.* (*citing Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997)).

**2. Analysis**

Pending before this Court are Defendants' motions to dismiss and Glazer's motion to amend the Complaint.  "Under Fed. R. Civ. P. 15(a)(2), leave to amend should be freely given

8

'when justice so requires.' Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). Delay alone is not a sufficient reason to deny leave to amend, but notice and substantial prejudice are critical factors in the determination. *Id.*" *Partner & Partner, Inc. v. Exxonmobil Oil Corp.*, 326 Fed. Appx. 892, 899 (6th Cir. 2009). Nonetheless, "it is well settled law that [a] district court may deny a motion to amend if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986) (*citing Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). In other words, where the amendment would be futile, there is no reason to allow it. *See, e.g., Frank v. Dana Corp.*, 2009 U.S. Dist. LEXIS 77030 at *43 (N.D. Ohio Aug. 25, 2009).

Glazer's amended complaint is identical to the original complaint in all respects save for the class action allegations contained in paragraphs 165 through 174 of the amended complaint. Because the alleged shortcomings of Glazer's complaint are not cured by any changes in the amended complaint, it would be an inefficient use of judicial resources to allow Glazer to amend his complaint without first ruling on Defendants' motions to dismiss. (Doc. No. 30.)

The primary causes of action in Glazer's Complaint, and the basis for federal jurisdiction, revolve around his claim that Defendants violated the FDCPA. Glazer's state law claims are based on the same factual allegations that support his FDCPA claims. However, the Court shall not address Glazer's state law claims when considering whether to allow amendment of the

complaint, as this Court's jurisdiction is tied to the viability of his FDCPA claims.[8]

### a. Defendant Chase

In its motion to dismiss, Chase argues that Glazer's FDCPA claims cannot survive, because Chase is not a "debt collector" as defined by FDCPA, as it was the servicer of the mortgage *prior* to the loan becoming defaulted. (Doc. No. 18 at 7-8; Doc. No. 40 at 2-5.) Pursuant to the FDCPA, "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15. U.S.C. § 1692a(6). However, the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." 15 U.S.C. §

---

[8] "Whether or not to dismiss a pendent state claim after all federal claims have been disposed of is a question generally left to the discretion of the district court. *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004 (6th Cir. 1987); *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Moreover, this circuit has consistently expressed a strong policy in favor of dismissing such state law claims. *See, Service, Hospital Nursing Home & Public Employees Union, Local No. 47 v. Commercial Property Services, Inc.*, 755 F.2d 499 (6th Cir. 1985), cert. den. 474 U.S. 850 (1985); *Kurz v. State of Michigan*, 548 F.2d 172 (6th Cir. 1977), cert. den. 434 U.S. 972 (1977); *Gibson v. First Federal Savings & Loan Ass'n of Detroit*, 504 F.2d 826 (6th Cir. 1974)." *Walker v. Consumers Power Co.*, 1990 U.S. App. LEXIS 2575 (6th Cir. Feb. 23, 1990). If it is determined that Glazer's FDCPA claims cannot survive a 12(b)(6) motion to dismiss, the dismissal of his remaining state law claims would be warranted.

1692a(6)(F).

In the Complaint, Glazer alleges that the mortgage and note on the Bristol property was assigned by Coldwell Banker to Fannie Mae well before any assignment was made to J.P. Morgan Chase and, subsequently, to Chase, but that said assignment was never recorded. (Compl. ¶¶39-40, 73.) Glazer has also attached a document purporting to be an assignment from Coldwell Banker to Fannie Mae on September 3, 2003. (Doc. No. 34, Exh. B.) Thus, Glazer alleges that Chase never received ownership rights in the Bristol property. (Compl. ¶25.) Meanwhile, Chase filed a document purporting to assign both the mortgage and the note from Coldwell Banker to J.P. Morgan Chase, which was recorded on November 30, 2007. (Doc. No. 18, Exh. A.) Chase has also filed a document purporting to assign both the mortgage and the note from J.P. Morgan Chase to Chase, which was recorded on June 4, 2008.[9] (Doc. No. 18, Exh. A.) At this stage of the proceedings, Glazer's allegations must be taken as true and construed most favorably towards him as the non-moving party. Thus, for the purposes of this motion, Chase was not the owner of the mortgage and note on the Bristol property.

"An entity which does not own the loan but merely 'services' the loan is treated as a 'creditor' and generally is not subject to the FDCPA." *Martin v. Select Portfolio Serving Holding Corp.*, 2008 U.S. Dist. LEXIS 16088 at *9 (S.D. Ohio Mar. 1, 2008) (*citing Johnson v. Sallie Mae Servicing Corp.*, 102 Fed. Appx. 484, 487 (7th Cir. 2004); *Bailey v. Security Nat. Servicing Corp.*, 154 F.3d 384 (7th Cir. 1998)). The Southern District Court of Ohio explained

---

[9] Chase has offered no explanation as to how Coldwell Banker could assign its rights in the mortgage and note to another entity once it had previously been assigned, nor has Chase disputed that an assignment to Fannie Mae occurred. Based on Glazer's allegations and a *prima facie* review of the documents, it appears that there is, at the very least, a hole in the chain of title to the mortgage and the corresponding note.

that "[w]here [a] debt was assigned for servicing before default of the loan, the assignee is exempt from the [FDCPA] because the assignee becomes a creditor and is collecting its own debt. *Id.* (*citing Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996)); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[A] debt collector does not include the consumers creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.")

Chase points to allegations in Glazer's Complaint to show that it was servicing the loan prior to default. (Doc. No. 40 at 3.) Specifically, Glazer has alleged that Chase began servicing the loan on November 1, 2007, at which time Glazer also alleges that the loan was not yet in default. (Compl. ¶44; *see also* Amended Compl. ¶44.)[10] As this Court understands Glazer's argument, he asserts that, even though Chase was the servicer of the Klie loan as early as November of 2007, the June 2, 2008 assignment from JP Morgan Chase Bank to Defendant Chase transformed Chase into a debt collector because the loan was in default by that point in time. (Doc. No. 32 at 7-9.) However, Glazer's theory that the purported June 2008 assignment changed Chase from a servicer into a "debt collector" is undercut by his other allegations. As discussed above, Glazer alleges that the June 2008 assignment could not have transferred ownership of the note and mortgage to Chase because Fannie Mae was the owner of record at the time. As such, Glazer alleges that only servicing rights could have been transferred. Glazer concedes that Chase was the a servicer (or subservicer) of the Klie loan – and not the owner of

---

[10] The Complaint alleges the following: "On 1 November 2007, Chase assumed the day to day servicing rights of the Klie loan on behalf of JP Morgan. Mr. Klie had no arrears with Coldwell Banker. Mr. Klie was credited with timely payments for the months of November and December 2007 and January 2008." (Compl. ¶44.)

12

the loan – both before and after it went into default.  Therefore, Chase, as the servicer prior to default, should be treated as a "creditor" and not subject to the FDCPA.  Glazer has cited no case law to suggest that the servicer of a loan in good standing loses its status as a servicer where an allegedly invalid ownership assignment is made to that same servicer *after* the loan enters the default stage.[11]  Therefore, because each and every FDCPA action alleged by Glazer requires that the defendant be a statutorily defined "debt collector," it is recommended that all FDCPA claims against Defendant Chase be dismissed.[12]

### b. Defendant RACJ

In its motion to dismiss, RACJ argues that Glazer's FDCPA claims cannot survive, because it too is not a "debt collector."  Specifically, RACJ argues that litigation activities by attorneys in mortgage foreclosure actions are not regulated by the FDCPA.  (Doc. No. 23 at 10.) RACJ brought a mortgage foreclosure action in state court on behalf of Chase on June 5, 2008. The instant Complaint does not allege any specific activity by RACJ outside the foreclosure action.  Moreover, any acts by RACJ occurring prior to June 1, 2008 could not serve as the basis for liability, as they would be barred by the FDCPA's one-year statute of limitations.  *See* 15 U.S.C. § 1692k(d).

---

[11]  15 U.S.C. § 1692a(6)(F)(iii) explains that an owner of a debt is not immune from liability when the debt was obtained after it became defaulted.  Nonetheless, it is unclear whether a *valid* ownership assignment, made after a loan enters default, would transform an entity that had been servicing the loan prior to default into a debt collector within the meaning of the FDCPA.  As Glazer has not made such an allegation, but rather adamantly alleges that Chase never became the owner of the debt, it is unnecessary to decide what effect a valid assignment would have had on Chase's status.

[12]  Chase also argues that Glazer's FDCPA claims should be dismissed because he is not a consumer under the meaning of the Act.  However, as Chase is not a debt collector as defined by the FDCPA, it is unnecessary to decide whether Glazer is a "consumer."

The Supreme Court's conclusion in *Heintz v. Jenkins*, 514 U.S. 291 (1995), indicates that "the FDCPA is intended to burden debt-collectors even when they are engaged in litigation." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615-616 (6th Cir. 2009). The Supreme Court has held that lawyers, in their function as debt collectors, are covered by the FDCPA *Id. citing Gionis v. Javitch, Block & Rathbone, LLP*, 238 F. App'x 24, 26 (6th Cir. 2007).

> Given the Supreme Court's detailed analysis and clear conclusion in *Heintz* that the FDCPA does apply to litigation-related activity, we believe that *Gionis* correctly concluded that the First Amendment does not shield lawyers engaged in litigation from FDCPA liability. *See Heintz*, 514 U.S. at 294, 514 U.S. at 294. The opposite conclusion, that the First Amendment prohibits FDCPA suits based on statements made during judicial proceedings, would negate the Supreme Court's holding that the FDCPA "does apply to lawyers engaged in litigation." *Heintz*, 514 U.S. at 294, 514 U.S. at 294 (emphasis added). Most of the other circuits that have considered this question have reached the same conclusion. *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 232 (4th Cir. 2007) ("All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the FDCPA applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition.")

*Hartman*, 569 F.3d at 615-616.

Thus, RACJ is not categorically immune from liability under the FDCPA because it was engaged in litigation activity. Nonetheless, RACJ argues that "many courts" have held that the litigation actions of counsel during a *mortgage foreclosure action* are not within the scope of activities regulated by the FDCPA. (Doc. No. 23 at 10.) RACJ asserts that a foreclosure action does not seek payment or collection of a debt, but seeks to enforce a security interest. RACJ relies exclusively on case law from outside the Sixth Circuit. *See, e.g., Beadle v. Haughey*, 2005 U.S. Dist. LEXIS 2473 at *8 (D.N.H. Feb. 9, 2005) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA, [as] '[s]ecurity enforcement activities fall outside the scope of the FDCPA because

they aren't debt collection practices.'") (*citing Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004); *Sweet v. Wachovia Bank & Trust Co., N.A.*, 2004 U.S. Dist. LEXIS 29862 at *6 (N.D. Tex. Feb. 26, 2004) (finding that "the FDCPA does not cover foreclosure as 'debt collection.'"); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (finding that foreclosure is distinct from the collection of a money obligation as payment of funds is not the object of the foreclosure action, wherein the lender is foreclosing its interest in the property); *Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp.2d 716 (D.W. Va. 1998), *aff'd*, 173 F.3d 850 (4th Cir. 1999) (foreclosing on property pursuant to the deed of trust is not the collection of debt and thus did not fall within the terms of the FDCPA); *see also Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 936 (9th Cir. 2007) (holding that "communications directed only to a debtor's attorney, and unaccompanied by any threat to contact the debtor, are not actionable under the [FDCPA]."); *Bergs v. Hoover, Bax & Slovacek*, 2003 U.S. Dist. LEXIS 16827 at *16 (N.D. Tex. Sept. 24, 2003) (correspondence sent from attorney to debtor after notice of foreclosure was "not subject to the FDCPA because it was sent in pursuit of the foreclosure proceedings.")

Glazer, in his brief in opposition, fails to identify any federal law supporting his argument that the institution of a mortgage foreclosure action constitutes debt collection within the meaning of the FDCPA. (Doc. No. 32 at 9-10.) This Court's own review has not uncovered any such decision from this Circuit. Furthermore, the Court finds the cases cited by RACJ to be persuasive, as they advance a reasonable interpretation of 15 U.S.C. § 1692a(6)(F).[13] It bears

---

[13] Pursuant to 15 U.S.C. § 1692a(6)(F), a "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a

noting that the Complaint for Foreclosure in the state court sought to establish that the mortgage was in default and sought to have the property sold.  (Doc. No. 34, Exh. F.)

Because RACJ was merely attempting to enforce a purported security interest on behalf of a client, it was not engaged in debt collection under the FDCPA.  Glazer's FDCPA claim against RACJ, therefore, cannot survive.  Consequently, it is recommended that all FDCPA claims against Defendant RACJ be dismissed.

### c. Defendant Safeguard

In its motion to dismiss, Safeguard also argues that Glazer's FDCPA claims cannot survive, because Safeguard is not a "debt collector" collector as defined by FDCPA. Specifically, Safeguard argues that Glazer's FDCPA claim against Safeguard is based on the following: (1) a single "notice" that it left at the Bristol property during an inspection; (2) other notices allegedly left at the property by "all Defendants;" and (3) allegedly false representations made to Glazer by various Defendants during the state foreclosure proceedings.  (Doc. No. 25 at 5, citing the Compl. at ¶¶ 77, 103, 105-106, 91-92, 98.)  In his Complaint, Glazer alleges that Safeguard is a "property management firm."  (Compl. ¶26.)

As stated above, "[t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15. U.S.C. § 1692a(6).

---

bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor."

Even an entity that "uses interstate commerce and the mails to collect debts" does not qualify as a "debt collector" under the FDCPA unless such activity is its "principal purpose." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 411 (6th Cir. Ohio 1998) (finding that American Express was primarily in the business of extending credit, which was not enough to turn it into a debt collector under the FDCPA).

Safeguard asserts that the allegations do not support either the conclusion that it regularly collects or attempts to collect, directly or indirectly, debts owed or that it used any instrumentality of interstate commerce or the mails to attempt collection.  (Doc. No 25 at 5-7.) The Court agrees.  Glazer argues that Safeguard's actions while on the Bristol property were part of a conspiracy to pressure him to pay the debt.  (Doc. No. 32 at 11.)  Glazer's conclusory allegation that the alleged activities (i.e. "winterizing" the bathroom, damaging the furnace, placing a combination lock on the door, etc.) were aimed at collecting a debt, however, does not render it so.  When considering a Rule 12(b)(6) motion, "[a] court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations." *Deere v. Javitch*, 413 F. Supp. 2d 886, 889 (S.D. Ohio 2006) (*citing Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974)).  If a plaintiff such as Glazer could withstand a Rule12(b)(6) motion by merely characterizing any potentially objectionable activity as aimed towards debt collection, the reach of the FDCPA would be nearly limitless.

In addition, Glazer's vague allegations do not support the inference that Safeguard, a property management company, is, in actuality, principally engaged in the business of regularly

17

collecting debts.[14]  Glazer attempts to circumvent this requirement by alleging, without any actual factual basis, that Safeguard was engaged in an ongoing conspiracy with Defendants Chase and RACJ.  (Doc. No. 32 at 11.)  Glazer's response, furthermore, is devoid of any allegation suggesting that Safeguard utilized any instrumentality of interstate commerce or the mails.  Glazer attempts to argue that, pursuant to §1692d, "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  Nonetheless, the term "debt collector," as used in §1692d, does not vary from the general definition set out in §1692a(6).

Moreover, Glazer has not identified any communication from Safeguard that expressly references the debt owed.  The FDCPA defines a communication as "the conveying of information ***regarding a debt*** directly or indirectly to any person through any medium." (emphasis added).  As such, Glazer's allegations are incapable of supporting the conclusion that Safeguard was principally engaged in the business of debt collection or that Safeguard used an instrumentality of interstate commerce or the mails to collect a debt.  Therefore, because each and every FDCPA violation alleged by Glazer requires that Safeguard be a statutorily defined "debt collector," it is recommended that all FDCPA claims against Defendant Safeguard be dismissed.

### d. Other Defendants

The Complaint also names Cindy A. Smith as a Defendant due to her capacity as an employee of Chase.  (Compl. ¶8.)  Ronald Chernek and Darryl Gormley are named Defendants

---

[14]  Glazer's own allegations refer to Safeguard as a property management company. (Compl. ¶26.)

due to their status as partners/employees of Defendant RACJ. (Compl. ¶¶10-11.) Finally, the Complaint names numerous "John Doe" defendants. (Compl. ¶13.) Because Glazer has not alleged that such individuals were acting as debt collectors on their own and his FDCPA claims against Defendants Chase, RACJ, and Safeguard cannot withstand Defendants' Rule 12(b)(6) motion, there remains no basis for the liability of the aforementioned individual defendants.

### e. Remaining State Law Claims

As Glazer has not stated an FDCPA claim against any of the named Defendants, the Complaint is left with only alleged state law violations. A district court can choose to decline to exercise supplemental jurisdiction over state law claims. *See, e.g., Musson Theatrical, Inc. v. Federal Express, Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("After a 12(b)(6) dismissal, there is a ***strong presumption*** in favor of dismissing supplemental claims.") (emphasis added). Therefore, it is recommended that the Court decline jurisdiction over Glazer's state law allegations and dismiss those claims without prejudice.

### IV. Conclusion

It is recommended that Defendants' motions to dismiss (Doc. Nos. 18, 23, and 25) be GRANTED. Specifically, it is recommended that all of Glazer's federal FDCPA claims be DISMISSED with prejudice and that his remaining state claims be DISMISSED without prejudice. It is further recommended that Glazer's motion for leave to amend the complaint (Doc. No. 30) be DENIED as futile.

s/ Greg White
U.S. Magistrate Judge

Date: January 21, 2009

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**