**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **LAWRENCE R. GLAZER et al.** | ) | CASE NO. 1:09CV1262 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| **CHASE HOME FINANCE LLC et al.** | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SAFEGUARD PROPERTIES INC'S
OPPOSITION TO PLAINTIFF'S SECOND MOTION
TO AMEND THE COMPLAINT**

**I. PRELIMINARY STATEMENT**

On January 21, 2010, Magistrate Judge White recommended that Plaintiff's claim under the Fair Debt Collection Practices Act ("FDCPA" or the "Act") against all Defendants be dismissed with prejudice, that his remaining state law claims be dismissed without prejudice, and that his motion to amend the Complaint be denied as futile. (Doc 53). On February 18, 2010, Plaintiff filed his Objections to the Report and Recommendations ("Objections"), arguing, among other things, that Magistrate Judge White erred when he found that Safeguard was not a "debt collector" covered by FDCPA and that it did not engage in any debt collection activities with respect to Plaintiff that violated FDCPA. (Doc. 55).

In his Objections, Plaintiff insists that his claims were properly pled. Nevertheless, recognizing that his Complaint in fact is not legally sufficient to withstand Safeguard's motion to dismiss, Plaintiff moves the Court for the second time for leave to amend his Complaint, but only if this Court decides to adopt Magistrate Judge White's Report and Recommendation. This request is futile; Plaintiff's proposed Second Amended Complaint ("SAC") suffers from the

1

same deficiencies as his first two attempts at stating a claim against Safeguard. As a result, the Court should reject this latest futile attempt by Plaintiff to keep this meritless lawsuit against Safeguard alive in this Court.

## II. LAW AND ARGUMENT

### A. Plaintiff's proposed Second Amended Complaint adds no factual allegations sufficient to remedy the fatal defects in his original Complaint and should be rejected by the Court as futile.

The Court should deny Plaintiff's Motion for Leave to Amend his Complaint incorporated into his Objections and filed concurrently. (See Doc. 55 at p. 19 and Doc. 56). Plaintiff's proposed amendment represents a change to his claims in the name only, as their substance remains Safeguard's conduct that does not amount to any prohibited conduct, whether under the federal or state law.

"A district court may deny leave to amend in cases of bad faith, dilatory motive, or undue prejudice to the opposing party." *Foman v. Davis*, 372 U.S. 178, 182 (1962). Moreover, it is within the Court's sound discretion to deny leave to amend the complaint where "there is . . . futility of the amendment." *Miller v. Champion Eter., Inc*., 346 F.3d 660, 690 (C.A. 6 2003). A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co*., 203 F.3d 417, 420 (C.A. 6 2000).

Plaintiff alleges that "newly discovered facts" mandate that he be allowed to amend the Complaint to "correct, supplement, and clarify certain factual allegations." (Doc. 56 at p.3 ("Plaintiff's Motion")). However, in seeking to amend his Complaint yet again, Plaintiff fails to heed Magistrate Judge White's ruling that his recitations of legal jargon and statutory language in the original Complaint did not amount to factual allegations necessary to sustain his claims against Safeguard. In fact, Plaintiff's amended claims setting forth Safeguard's alleged wrongful

conduct toward Plaintiff continue the pattern of serving up legal conclusions and regurgitations of statutory language as factual allegations. For these reasons and for all the reasons articulated in Safeguard's Opposition to Plaintiff's Motion to Amend the Complaint (Doc. 35) and its Motion to Dismiss Plaintiff's Complaint and Memorandum in Support of that Motion (Docs. 25 and 39), Plaintiff's current motion to amend the complaint should be rejected as futile.

**1. Factual allegations related to Safeguard as presented in the Second Amended Complaint.**

**a. Conflicting allegations mentioning Safeguard.**

Plaintiff seeks to amend his Complaint to augment his previous description of Safeguard as merely an Ohio "corporation with its principal place of business in Cleveland, Ohio" by quoting from FDCPA to now also say that Safeguard's

> principal business purpose is to enforce security interests in real property and/or facilitate enforcement of security interests through judicial foreclosure son behalf of mortgage lenders and servicers. In so doing, Defendant Safeguard regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another by using instrumentalities of interstate commerce.

(SAC ¶11; *cf.* Complaint ¶12). Nevertheless, Plaintiff concedes that Safeguard is primarily in the business of providing property management services. (SAC ¶32, "CHF (Defendant Chase) often charges borrowers for property inspections and employs <u>property management firms, such as [Safeguard]</u> . . . to conduct an inspection or undertake property maintenance." (emphasis added); *cf.* Complaint ¶26 (same)). But, still trying to paint Safeguard as a "debt collector," Plaintiff now alleges that CHF "employs property management firms, such as Defendant Safeguard, to conduct in the field contacts with delinquent borrowers through phone calls and door knocking." (SAC ¶33).

Plaintiff does not allege that Safeguard in fact engaged in "field contacts" with borrowers via telephone or that Safeguard contacted him via telephone at any time. He instead alleges that

3

the "true purpose" of home inspections by various property management companies, "including but not limited to Defendant Safeguard" was "to contact borrowers in connection to collection of delinquent debts owed to GSE[1] . . . face-to-face." (SAC ¶42). In alleging that Defendants here agreed to engage in a campaign to "pressure the borrowers to pay the debt" by conducting home inspections, Plaintiffs quotes a description of general services offered to the public that is published on Safeguard's website. (*Id*.; *cf*. Complaint ¶35 (virtually identical allegations that property inspections by "property management firms" like Safeguard were intended to "pressure the borrowers to pay debt.")) The services described on Safeguard's website include an attempt during "a visual exterior inspection" "to contact the mortgagor" to deliver "[a] message . . . to contact the Client's facility at a specified phone number and extension." (*Id*.) Plaintiff generally alleges that "if the borrower was not at home, the 'inspector' would contact neighbors, leave in conspicuous places notices . . . and lock out the borrower by changing locks and/or board the still occupied property." (*Id*.). Plaintiff does not, however, allege that Safeguard actually contacted any of his neighbors, put notices in conspicuous places outside the house, or locked Plaintiff out of a "still occupied" property. In fact, Plaintiff affirmatively alleges that "at all relevant times to this complaint [he] was an individual *residing in La Quinta, California*." (SAC ¶6; *cf*. Complaint ¶6 (same)) (emphasis added). Whatever can be said of Plaintiff's generalized allegations, the fact remains that he makes no allegations of actual conduct by Safeguard directed toward him that is governed by the FDCPA.

### b. Allegations inexplicably lumping Safeguard with other Defendants.

The proposed Second Amended Complaint further continues Plaintiff's practice of mischaracterizing all of his factual allegations as applicable to all "Defendants," while the sole

---

[1] "GSE" is undefined in SAC.

specific allegation against Safeguard remains its property preservation activities at the vacant property in foreclosure. Specifically, although Plaintiff never alleges that Safeguard made any representations to him or any court whatsoever, he nevertheless also states that *all* Defendants, including Safeguard, "routinely make these written and oral representations to borrowers and courts . . . ." (SAC ¶27; *see also*, ¶¶28-29 (all "Defendants routinely lack a reasonable basis for their representations to borrowers" and "all named Defendants have failed to send consumers a written notice . . . .")).

Further, Plaintiff alleges that all "Defendants" agreed to "record intervening assignments of mortgage" to "conceal the indentify of the creditor, cloud title to property, and deceive consumers and the court." (SAC ¶39; *cf*. Complaint ¶32 (same)). This alleged scheme, apparently, also includes agreement by all "Defendants" "to include in complaints and other court filings" incomplete documents. (SAC ¶40; *cf*. Complaint ¶33 (same)). The allegations are made broadly to include Safeguard despite the fact that Plaintiff does not allege that Safeguard was ever a party to any foreclosure proceedings or any other court action with respect to Plaintiff's property. These allegations in some portions of his Complaint that all Defendants misrepresented ***in court filings***, during the foreclosure proceedings, the true ownership and location of the note secured by the property in question, are contradicted by Plaintiff's admissions in other places in the Complaint that all misrepresentations and omissions were made by "Defendants Chernek, Smith, and Gormley." (SAC ¶180). Plaintiff certainly does not allege, with the specificity required by Fed. R. Civ. P. 9 – or even generally – that Safeguard actually misrepresented anything to anyone.

5

### c. Allegations specific to Safeguard.

The only remaining allegations in the SAC that specifically relate to Safeguard are as follows:

- On May 15, 2008 CHF "referred this matter to Defendant Safeguard for a face-to-face borrower contact campaign." (SAC ¶64).

- On December 28, 2008 Safeguard left a "written notice on the front door of the Bristol property." (SAC ¶95; *cf.* Complaint ¶71(alleging that on that date the notice was left on the front door, without indentifying a party that left the notice)).

- On April 13, 2009, Safeguard left a "written notice . . . .on the front door of the Bristol property," apparently requesting proof of insurance. (SAC ¶100; *cf.* Complaint ¶76 (alleging that the notice was left on the front door by "Defendants")).

- Plaintiff "believes" that between May 16, 2008 and June 30, 2009, Safeguard made "repeated visits to the property . . . attempted to contact the neighbors, publicized the alleged delinquent status of the Klie mortgage, and posted various written notices in conspicuous places designed to communicate with the borrower in connection with a collection of a delinquent debt." (SAC ¶¶101, 130).

- On April 21, 2009, Safeguard entered the property in question, "winterized" the house, damaged certain items, changed locks, placed a combination lock box on the door, shutoff utilities, and posted a sign-in sheet inside the house. (SAC ¶¶102, 110, 132, 186-191; *cf.* Complaint ¶¶77, 103 (same))

- Since June 5, 2008, Safeguard and CHF made "numerous" visits to the property in question, with the last entry taking place on June 22, 2009, and left various notices on the front door, including "delinquent status notices, warning notices, and sheriff sale notices." (SAC ¶¶103, 125(3), 130-134. 152(4), 155, 157; *cf.* Complaint ¶¶78, 105 (same, except the date of the last entry))

- Safeguard actually entered the property in question only on two occasions – on April 21, 2009 and June 22, 2009. (SAC ¶¶ 186, 188).

### 2. Plaintiff sets forth no new allegations that could support his FDCPA claim against Safeguard.

As demonstrated above, Plaintiff's proposed SAC recycles the allegations of the original Complaint and adds a heavy dose of impermissibly vague assertions and conclusory recitations of legal standards.

6

With respect to the notices allegedly left by Safeguard at the property in question, Plaintiff states that he "believes" that the notices "and the manner in which they were posted, were intended to embarrass, oppress, harass, and abuse Plaintiff." (SAC ¶103; *cf.* Complaint ¶83 (same)). Plaintiff does not attach any of the notices to SAC, does not describe their content or quote any statements made in those notices and does not allege that he actually received any of those notices, was present when they were affixed, or otherwise witnessed their placement at the property.

Plaintiff appears to claim that Safeguard violated FDCPA by making allegedly false representation regarding the validity of the debt and its true owner by visiting the property in question and posting the notices there. Setting aside the fact that Safeguard is not a "debt collector" subject to FDCPA, Plaintiff's FDCPA claim still cannot be sustained by the allegation that Safeguard, a non-party to the underlying foreclosure proceedings, should have known that the foreclosure action may not have been properly filed. *Richeson v. Javitch, Block & Rathbone, LLP*, 576 F.Supp.2d 861, 867 (N.D.Ohio 2008) ("FDCPA does not require an independent investigation of the debt referred for collection," and a claim for FDCPA violation cannot thus be sustained against a party that relied in its debt collection activities on representations made by the alleged owner of the debt).

Plaintiff further alleges that Safeguard's visits to the property "were done with malice and for the purpose of communicating with [him] in connection to a collection of a debt owed another, harassing, annoying, and pressuring the . . . owner to pay off a debt." (SAC ¶113; *cf.* Complaint ¶107 (alleging that "on-site visits" were made "for the purpose of collecting a debt")). Plaintiff does not allege that he at any time came in contact with Safeguard during its visits to the

7

property at issue or received any letters, telephone calls or any other communication from Safeguard.

Consequently, Plaintiff's allegations against Safeguard in the SAC make clear that he had no encounters with Safeguard of any kind, let alone encounters proscribed by FDCPA. As a result, although Plaintiff inserts into the SAC the "newly discovered evidence" of a description of services offered by Safeguard to the public, just as in his original Complaint, he fails to allege any facts beyond those that Magistrate Judge White already properly found to be insufficient to sustain his FDCPA claim against Safeguard.

### 3. Plaintiff sets forth no new allegations that could support his misrepresentation and concealment claims against Safeguard.

With respect to Counts IV-VI of SAC, Plaintiff kept the allegations contained in his original Complaint unaltered and once again failed to set forth with specificity any misrepresentations made to him by Safeguard on which he actually relied to his detriment. Just as in his original Complaint, he merely alleges that during the foreclosure proceedings, "Defendants" concealed information relating to his debt from him and intentionally and/or negligently made false representations regarding the true owner of his debt, the validity of his debt, and the existence and location of the note securing his debt. (SAC ¶¶160-183; *cf.* Complaint ¶¶119-156).

Plaintiff once again offers no specifics regarding any statement actually made to him by Safeguard at any time and merely restates a legal conclusion that he "justifiably relied" on "Defendants'" alleged misrepresentation or failure to disclose information. (SAC ¶¶168, 181; *cf.* Complaint ¶¶141, 154 (same)). He once again fails to state, with specificity, what he actually did in reliance on any claimed representations or concealment that caused him any harm.

Plaintiff again admits that he vigorously contested the alleged false representations made by the "Defendants" regarding the validity and ownership of his debt. (SAC ¶¶ 82-83, 87; *cf.* Complaint ¶¶59, 61, 76, 113 (same)). Thus, even if any representations were made to Plaintiff or any material facts were concealed from him by any Defendant, he cannot prove any set of facts to establish that he actually relied on those representations to his detriment.

> **4. Plaintiff sets forth no new allegations that could support his trespass claim against Safeguard.**

With respect to his claim against Safeguard for trespass, Plaintiff does not deny that Safeguard was authorized to enter the property by the provisions of the mortgage securing the property. (*See* copy of the mortgage attached to Doc. 25). Plaintiff nevertheless once again characterizes Safeguard's entry onto the property as wrongful because Safeguard acted "with knowledge that Plaintiff had title, possession, and control of the property; that the property was not abandoned." (SAC ¶190, *cf.* Complaint ¶162 (same)). However, as Safeguard demonstrated in its Motion to Dismiss Plaintiff's original Complaint, Plaintiff's title to the property and his right to possess the property merely give him standing to assert a claim for trespass. It does not speak to whether Safeguard had authority to enter the property under the terms of the mortgage.

> **5. Plaintiff sets forth no new allegations that could support his conspiracy claim against Safeguard.**

Because Plaintiff failed to allege any new facts that could sustain any of his tort claims against Safeguard, his conspiracy claim fails as a matter of law. *Gosden v. Louis*, 116 Ohio App. 3d 195, 220 (Ohio App. 9 Dist. 1996) (conspiracy claim is derivative and cannot be maintained absent an underlying tort that is independently actionable).

### III. CONCLUSION

Based on the foregoing, and for all the reasons articulated in Safeguard's Motion to Dismiss Plaintiff's Complaint (Doc. 25), Reply in Support of that Motion (Doc. 39), and its Opposition to Plaintiff's Motion to Amend the Complaint (Doc. 35), Safeguard respectfully requests that the Court deny Plaintiff's Motion to file a Second Amended Complaint.

Respectfully submitted,

*/s/ Marcel C. Duhamel*
Anthony J. O'Malley (0017506)
Marcel C. Duhamel (0062171)
Natalia Steele (0082530)
VORYS, SATER, SEYMOUR AND PEASE LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, Ohio 44114-1724
Telephone: (216) 479-6100
Facsimile: (216) 479-6060
Email: ajomalley@vorys.com
mcduhamel@vorys.com
nsteele@vorys.com

*Attorneys for Defendant*
*Safeguard Properties Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically this 5th day of March, 2010. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Marcel C. Duhamel*
*One of Attorneys for Defendant*
*Safeguard Properties Inc.*