IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE GLAZER, et al. | ) | CASE NO: 1:09 CV 1262 |
| | ) | |
| Plaintiff | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CHASE HOME FINANCE LLC, et al. | ) | **DEFENDANTS REIMER, ARNOVITZ,** |
| | ) | **CHERNEK & JEFFREY CO., L.P.A.,** |
| Defendants | ) | **RONALD CHERNEK AND DARRYL** |
| | ) | **GORMLEY'S REPLY IN SUPPORT** |
| | ) | **OF MOTION TO DISQUALIFY** |
| | ) | **COUNSEL NICOLETTE GLAZER** |
| | ) | **AND THE LAW OFFICES OF LARRY** |
| | ) | **R. GLAZER AND STRIKE CLASS** |
| | ) | **ALLEGATIONS** |

Defendants Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., Ronald Chernek and Darryl Gormley ("the Reimer Firm") respectfully submit this Reply in Support of their Motion to Disqualify the Law Offices of Larry R. Glazer and Nicolette Glazer and Strike Class Allegations. In the interests of judicial economy, Defendants will not respond to and address all of Plaintiff's misrepresentations regarding case law, the facts, and status of discovery in this case.[1] Defendants will address the relevant issues relating to disqualification.

## I.  MOTION TO DISQUALIFY COUNSEL

Plaintiff's law firm, the Law Offices of Larry R. Glazer **and** his wife, Nicolette Glazer should be disqualified as counsel. Pursuant to well established case law, including the case law unfounded from the Sixth Circuit, there is an inherent conflict when the named plaintiff

---

[1] Plaintiff has made scandalous and impertinent accusations against Defendants, including claims of "cheating Ohio homeowners, lying to courts and mocking state and federal law." Such accusations are unprofessional, unfounded and potentially defamatory. They should be stricken.

representative's law firm (and spouse) acts as class counsel. Here, there is no dispute that Mr. Glazer's own law firm and his spouse are counsel of record. Shockingly, Plaintiff fails to address this issue or any of the case law that supports disqualification under the circumstances here. <u>Plaintiff wholly ignores the issue that his law firm, of which he is the owner, is counsel of record in this case.</u> Plaintiff's motion lacks any supporting authority and he attempts to circumvent the central issues by presenting a confusing analysis of federal case law regarding conflict of interest, self interest and tolling issues that have nothing to do with the facts and circumstances of this case. He ignores the pertinent issues and overwhelming authority that warrants disqualification and instead mischaracterizes Defendants' arguments and the facts and evidence in this case and makes incredulous attacks on Defendants.

  **A.** **The Law Offices of Larry R. Glazer and Nicolette Glazer Must Be Disqualified. Mrs. Glazer is the Spouse of the Putative Class Representative and Plaintiff's Law Firm, the Law Offices of Larry R. Glazer, is Counsel of Record for Putative Class.**

As set forth in the Reimer Firm's Motion to Disqualify, a clear conflict of interest exists in Mrs. Glazer and the Law Firm representing the putative class because Mrs. Glazer is married to Plaintiff, the putative class representative, <u>and</u> his law firm is counsel of record. See, *Turoff v. The May Company*, 531 F.2d 1357 (6th Cir. 1976); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3rd Cir. 1976); *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999*)*; *World, L.L.C v. Atlas Choice Corp.*, Case No. 1:15CV24, 2015 U.S. Dist. LEXIS 65215 (N.D. Ohio, May 19, 2015); *Apple Computer, Inc. v. The Superior Court of Los Angeles County,* 126 Cal.App. 4th 1253, 2005 Cal. App. LEXIS 242 (2005); *Missud v. Oakland Coliseum Joint Venture*, Case No. 12-02967JCS, 2013 U.S. Dist. LEXIS 29915 (N.D. Cal., March 5, 2013).

Ignoring the multiple relevant cases cited by the Reimer Firm, Plaintiff argues that his marital relationship with putative class counsel does not create a conflict.  His argument, however, cannot be substantiated.  In the almost five pages of argument devoted to this issue in his opposition brief, Plaintiff cites to only three new cases – all of which are inapplicable to the matter at hand.[2]

To support his argument that there is no per se rule that prohibits a wife from representing her husband, Plaintiff cites to two cases from the 1850s.  Neither case was filed as a class action nor do they not relate to the issue here -- conflict with respect to a class representative's own law firm and wife representing both him and a putative class.  The first case, *Graf v. Wirthweine*, 1 Handy 19, is not available through LEXIS, and was not attached to Plaintiff's opposition brief.  Given that the second case is wholly inapplicable, the Reimer Firm presumes that *Graf* is likewise irrelevant, and does not address a class representative and putative class representation.  The second, *James D. Coolidge and wife v. Marry E. Paris*, 8 Ohio St.594 (1858), involved an underlying assault and battery committed by "wife" against Ms. Paris.  Mr. Coolidge settled the case with Ms. Paris on behalf of himself and his wife, but his wife later objected on the grounds that the settlement was made without her knowledge or consent.  At issue on appeal was whether Mr. Coolidge had the right to bind his wife without her consent. The Ohio Supreme Court held that the husband had the right to bind her to the settlement without her consent.

---

[2] Curiously Plaintiff attempts to differentiate two of the cases in the Reimer Firm's Motion, *Turoff v. The May Company*, 531 F.2d 1357 (6th Cir. 1976) and *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978) to try and support his argument that there is no conflict in a family member of a class representative representing the putative class.  These cases, however, provide just the opposite.  In both cases, attorneys and law firms were disqualified from representing the putative classes because the attorneys were either spouses of the class representatives or were also class representatives.

3

It is perplexing why Plaintiff cited to these cases, as they have no application to the matter at hand.  None of the facts or legal issues present in this case were at issue in *Coolidge*.  It is quite telling that Plaintiff has chosen to rely upon a case from 1858, involving marital rights that would never withstand scrutiny in this day and age.

Plaintiff also cites to a more recent, but inapplicable case, *Shanehchian v. Macy's Inc.*, Case No. 1:07-CV-00828, 2011 U.S. Dist. LEXIS 24376, *24 (S.D. Ohio Mar. 10, 2011) in support of his argument that the Sixth Circuit has no per se bar on familial connections between class representatives and class counsel.  (Plaintiff's Opp. P. 14).  This case in fact, contradicts his position that Mrs. Glazer and the Law Offices of Larry R. Glazer should not be disqualified. (ECF #177, Plaintiff's Opp. P. 14).  In *Shanehchian v. Macy's Inc.*, Case No. 1:07-CV-00828, 2011 U.S. Dist. LEXIS 24376, *24 (S.D. Ohio Mar. 10, 2011), the court did not address the issue of disqualification, but rather, whether the putative class representative was inadequate. *Shanehchian* involved a tenuous familial relationship between counsel and one of several class representatives - one of the non-lead attorneys for the putative class was a cousin-in-law of one of the class representatives.  The court explained that "Defendants have produced no credible evidence that Yates [the non-lead attorney] lured Johnson [the plaintiff] into participating in this lawsuit to act merely as a puppet[3] or that the cousin-in-law relationship will compromise [the non-lead attorneys] ability * * *."  Moreover, the court distinguished the case from *Turoff*, which Defendants rely on here, and specifically noted that in *Turoff*, three class plaintiffs were attorneys with class counsel's firm and the fourth was a wife.  *Turoff* is clearly on point here and *Shanehchian* has no application.  Here, the familial relationship is not tenuous, like the cousin-

---

[3] Plaintiff's deposition testimony clearly establishes he has abdicated all responsibility to his wife, (his counsel here) and is therefore an inadequate representative.  This issue will be addressed in-depth in Defendants' opposition to Plaintiff's Motion to Certify.  However, Defendants' initial Motion to Compel, Motion to Disqualify and Oppositoin to Motion to Quash (ECF #132, 147, 170), support Defendants' argument that Plaintiff has abdicated all responsibility to his counsel.  The testimony and arguments are incorporated herein.

4

in-law in *Shanehchian*. Counsel is the spouse of the putative class representative and the law firm is owned by Plaintiff.

Plaintiff further argues that under traditional rules of ethical and professional responsibility, no conflict of interest exists and in class actions "the ordinary assumptions about the attorney-client relationship do not apply." (Plaintiff's Opp. p. 9). Plaintiff is correct; there is an enhanced duty to safeguard the interests of the class members, as set forth in the case law cited by Defendants. This is why Defendants addressed the attorney-client relationship in the context of a class action, and not the ordinary attorney-client relationship.

Plaintiff spends fives pages citing to multiple cases that have no relevance to the issues in this case and conveniently fails to address the issue of the close familial relationship between a putative class representative and his spouse, the putative class attorney. Plaintiff cites to multiple cases, including *Beets, In Re Agent Orange* and *In Re Corn Derivatives* (Plaintiff's Brief, pp. 8-9), none of which address the central issue here with respect to a putative class representative's own law firm and wife representing both the class and class representative. In fact, *Beets* relates to a conflict in the criminal context. Clearly, there is a danger of biased decision making of both Mr. Glazer (as owner of the firm) and Mrs. Glazer. Both Mrs. Glazer and the law firm owe a duty of undivided loyalty not only to Mr. Glazer, but to the putative class, and the danger of bias or conflict is clearly present.

In the present case, the potential recovery of attorney's fees greatly exceeds the possibility of individual recovery, which also gives rise to a possible conflict of interest. See, *Susman v. Lincoln American Corp.,* 561 F.2d 86, 88 (7th Cir. 1977). The court in *Susman* further explained, in citing to the lower court's decision:

> Even though plaintiff does not expect to share in any attorney's fees recovered in this cause, there exists a possibility that one so situated will become more

5

> interested in maximizing the 'return' to his counsel then in aggressively presenting the proposed class' claims. For example, such a party might promote and be more receptive than other potential class representatives to a settlement agreement whereby his counsel might receive a relatively large and early fee, which is not, in fact, in the best interests of the proposed class. While it is true that such 'quick' settlements are possible in all class action suits, the possibilities increase where there is a close personal and/or professional relationship between the named plaintiff and the attorney seeking to represent the class.

*Id.* at 89.

Here, it is even more likely that the Plaintiff will seek to maximize his return as he will share in any attorney's fees recovered as he is the owner of the law firm acting as class counsel.[4]

There are also non-pecuniary interests such as the value and increase of the law firm if it receives a large recovery for attorney's fees. For example, the Plaintiff, Mr. Glazer, would also retain an interest in the reputation and good will of his law firm, which would be enhanced by a large attorney's fee award. *Id.* at 93. There is also the conflict of interest that could be considered in conjunction with the public perception that Mr. Glazer would share in attorney's fees won by his law firm. *Id.* at 94-95.

Plaintiff also argues that because the legal fees would not come from a common fund, this discounts any disqualification argument. However, given the possibility that a class action may settle, it does not matter whether the attorney's fees are paid out of a common fund or by the defendant directly. This issue was directly addressed in *Apple Computer, Inc.*, where the Court explained why disqualification is still warranted, even when the attorney fees are not from a common fund:

> Although under the terms of [a] settlement agreement, attorney fees technically derive from the defendant rather than out of the class recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represents a package deal. Even if the fees are

---

[4] Plaintiff claims that he refused to mediate and therefore his personal interests do not trump the class' interests. Plaintiff misrepresents the discussions regarding mediation, which stalled because Plaintiff has set forth and thus demanded over $2,000,000 in damages, including attorneys' fees in the underlying foreclosure.

>paid directly to the attorneys, those fees are still best viewed as an aspect of the class recovery.

*Apple Computer, Inc.* at 1269. Therefore, a prohibition against dual roles, serving as class counsel and class representative, would not be limited to just common fund cases, as Plaintiff attempts to argue. *Id.* The court in *Apple* was concerned with the fact that while there was no common fund, because the named representative is also an employee of class counsel, that representative would be more concerned with maximizing the return and with satisfying the needs of class counsel (or like here, his own firm) than he is with the needs of the other class members. *Id.* at 1271. The Glazers track record of claiming wildly excessive fees only highlights their conflict of interest presented in their case.[5]

Here, we are dealing with the situation where Mr. Glazer's law firm and his counsel, Mrs. Glazer, have put themselves in the position of divided loyalties, which includes their own financial interests and non-pecuniary interests, versus their obligation to the putative class.

A conflict of interest, like here, constitutes a serious violation of the law firm's duty to the class. As the Sixth Circuit has noted: "[if] the interests of a class are to be fairly and adequately protected, if the courts and the public are to be free of manufactured litigation, and if the proceeds are to be without cloud, the roles of class representative and class attorney cannot be played by the same person." *Turoff*, 531 F.2d at 1360.

After attempting to distinguish *Zylstra* and *Turoff* in one sentence, Plaintiff ignores the multiple other authorities which *were* cited supporting Defendants' Motion to Strike and Disqualification:

---

[5] Plaintiff seeks to recover as actual damages in this case, over $600,000 in attorney fees allegedly incurred in the underlying foreclosure action that was voluntarily dismissed. Plaintiff has refused to provide supporting documentation with respect to these fees, but the clearly excessive amount suggests that Plaintiff and his spouse will seek to maximize the recovery of attorney fees in this case.

7

- *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3rd Cir. 1976) (holding that a motion for disqualification should be granted because of the close relationship between putative class counsel and putative class representative);

- *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999*)* (court of appeals affirms district court's decision to disqualify attorney and law firm due to close familial relationship between putative class counsel and putative class representative);

- *World, L.L.C v. Atlas Choice Corp.*, Case No. 1:15CV24, 2015 U.S. Dist. LEXIS 65215 (N.D. Ohio, May 19, 2015) (court concluded that the plaintiff could not act as both putative class counsel and class representative);

- *Apple Computer, Inc. v. The Superior Court of Los Angeles County,* 126 Cal.App. 4th 1253, 2005 Cal. App. LEXIS 242 (2005) (holding that insurmountable conflict of interest exists between the putative class representative and law firm on one hand and the putative class on the other hand because named plaintiff representative's law firm was acting as class counsel);

- *Missud v. Oakland Coliseum Joint Venture*, Case No. 12-02967JCS, 2013 U.S. Dist. LEXIS 29915 (N.D. Cal., March 5, 2013) (motion to strike class allegations granted because Plaintiff could not be both the class representative and the class counsel).

By omission, Plaintiff concedes these cases state the correct rule of law and warrant the disqualification of his law firm, the Law Offices of Larry R. Glazer, and Nicolette Glazer.

## II.  MOTION TO STRIKE

### A. Plaintiff has Failed to Provide Any Authority that his Class Allegations Cannot be Stricken Pursuant to Fed.  Rule 12 (F), Local Rule 23.1(c) and Federal Case Law.

Here, Mr. Glazer's law firm, the Law Offices of Larry R. Glazer and his spouse, Nicolette Glazer, are attempting to act as class counsel.  This Court has held that Fed. R. Civ. P. 12(f) provides a basis to strike class allegations from a complaint.  *World, L.L.C. v. Atlas Choice Corp.*, Case No. 1:15CV24, 2015 U.S. Dist. LEXIS 65215 (N.D. Ohio May 19, 2015); see also *Missud v. Oakland Coliseum Joint Venture*, Case No. 12-02967, 2013 U.S. Dist. LEXIS 29915 (N.D. Cal. March 5, 2013).  This is especially so where, similar to the case here, the plaintiff was acting both as class representative and class counsel, through his own law firm.  See *World,*

8

*L.L.C.*, 2015 U.S. Dist. LEXIS 65215.  Moreover, Loc. R. 23.1(c) explicitly states that "[n]othing in this Rule shall preclude any party from moving to strike the class action allegations."

Ignoring the fact that this Court has stricken class allegations under Fed. R. Civ. P. 12(f) in circumstances similar to this case, Plaintiff argues in his opposition brief that his class allegations cannot be stricken under Fed. R. Civ. P. 12(f).  Glaringly absent from his brief, however, is any authority to either support his position or to refute the authority set forth by the Reimer Firm in its Motion to Disqualify/Strike.  Instead, Plaintiff resorts to name calling and making scandalous accusations against Defendants.  Plaintiff also attempts to distract the Court with an entirely irrelevant argument:  Fed. R. Civ. P. 12(f) does not support a motion to strike the class allegations because the claims of putative class members may be time barred because the statute of limitations period would no longer be tolled.  The tolling of the statute of limitations has absolutely no bearing upon whether Plaintiff's class allegations can or should be stricken under Fed. R. Civ. P. 12(f).  Instead, Sixth Circuit courts consider whether discovery can cure the central defect in the class claim.  *World, L.L.C.*, 2015 U.S. Dist. LEXIS 65215; *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).  If, as is here, the defect cannot be cured through discovery, it is appropriate to strike the class allegations pursuant to Fed. R. Civ. P. 12(f).  *Id.*

As Plaintiff failed to refute the authority set forth in the Reimer Firm's Motion that Fed. R. Civ. P. 12(f) provides a basis to strike his class allegations from the Complaint, the Reimer Firm's Motion to Strike the class allegations set forth in Plaintiff's Amended Complaint should be granted.

Finally, Plaintiff's Rule 23 analysis simply misses the mark.  First, in attempt to deflect from the issues with respect to the clear conflict of interest, Plaintiff misrepresents the record in

this case by arguing that Defendants refused to produce discovery and thus deprived the Court the ability to "probe behind the pleadings."  This is simply an untrue statement, and has no relevance to the issue of Plaintiff's own law firm and wife acting as class counsel.  Second, Defendants are not seeking a denial of class certification at this stage, nor are they asking this Court to strike the class allegations based on any other reason than the inherent conflict of interest that results from Plaintiff's own law firm and spouse representing him and the putative class.

**III.  THE PLEADINGS, DISCOVERY, AND TESTIMONY ELICITED AT DEPOSITIONS, INCLUDING MRS. GLAZER'S OWN TESTIMONY, ESTABLISH THAT MRS. GLAZER WILL BE A NECESSARY WITNESS AT TRIAL AND RULE 3.7 PROHIBITS HER AND THE LAW FIRM FROM CONTINUING AS COUNSEL IN THIS CASE.**

Again, Plaintiff fails to address any of Defendants' substantive arguments with respect to why Rule of Professional Conduct 3.7 warrants both Mrs. Glazer and the Law Offices of Larry R. Glazer's disqualification and has also failed to meet his burden in showing that none of the exceptions to Rule 3.7 apply.  Rather than address Defendants' arguments, Plaintiff circumvents the issues by citing only to the claims and defenses his counsel will not be testifying about.

Mrs. Glazer was a named defendant in the Underlying Foreclosure Action, acted *pro se* in the Underlying Foreclosure Action, and is an important witness with respect to the alleged damages. In fact, Mrs. Glazer is a potential class member here.  She was highly involved in the Underlying Foreclosure Action, probate matter and with respect to the insurance claim and remediation of the property.  Moreover, Mr. Glazer, the putative class representative, will be called as a witness, while his firm of which he is the owner, is employed as the class law firm.

> **A.   Mrs. Glazer is a Critical Witness With Respect to the Damages in this Case.  In Fact, Additional Documents Recently Obtained Establish Mrs. Glazer's Role in the Underlying Foreclosure, and Knowledge with Respect to the Claimed Damages (and other Disputed Issues) in this Case.**

Mrs. Glazer's testimony certainly relates to contested issues in this case --- i.e., Mr. Glazer's damages.  Plaintiff conveniently neglects to address the testimony with respect to <u>any of</u> the damages he is seeking in this case, in particular the over $1.5 million in actual damages, including over $600,000 in attorneys' fees just for defending the Underlying Foreclosure Action. These damages relate to the costs and expenses incurred and both his fees and Mrs. Glazer's fees in defending the Underlying Foreclosure Action.

As set forth in Defendants' Motion to Disqualify Counsel, the documents produced in discovery make clear that Mrs. Glazer is a critical fact witness with respect to the Underlying Foreclosure Action, alleged damage to the property, remediation and fees in defending the foreclosure.

In fact, documents have come to light which further establish Mrs. Glazer's role in the Underlying Foreclosure Action, remediation of the property and probate case.  Plaintiff is claiming as damages in this case, the alleged damage to the property (including mold and other remediation to the property).  Mrs. Glazer testified at deposition that an insurance policy covered the repairs and remediation with respect to the property.  (N. Glazer Tr.68-69).[6]  However, Mr. Glazer refused to produce any documents with respect to the insurance claim, what amounts were recovered, how much was paid with respect to the Property, and a threatened bad faith claim against the insurance company.  This is despite seeking the costs as damages in this case. For their part, Plaintiff and his counsel blocked meaningful discovery, most notably with

---

[6] Portions of Mrs. Glazer's deposition testimony are attached as Ex. A.

11

Plaintiff and his counsel's obstructive deposition and failure to respond to discovery requests, where the Defendants sought the documentation supporting Plaintiff's damages.

Because Plaintiff refused to produce relevant documents, Defendants subpoenaed documents from the insurance company, Auto Owners Insurance, and the mold remediation company, National Mold Remediation.  On their face, these documents not only demonstrate a lack of any good faith basis to pursue these damage claims, but make clear that Mrs. Glazer is a critical witness with respect to the damage to the property.

For example, the new documents obtained from Auto Owners Insurance Company establish that the damage to the Property was not caused by Defendants or Safeguard, but rather due to a structural defect, leaking roof and other causes.  (See, FFA000025-FFA000031; 35-36).[7] In addition, the correspondence between Auto Owners, National Mold Remediation and Mrs. Glazer establish her direct involvement in the repair and remediation of the property, including the costs to remediate.  (See, FFA000044-47, 54, Ex. 1 to Brown Aff.).  Mr. Glazer was evasive and unable to testify as to the source and damage to the Property and was instructed not to answer questions regarding Defendants' alleged involvement in the entering of the property.  (L. Glazer Tr. 89-92,100,112-119,284-287).[8]  Clearly, Mrs. Glazer has the requisite knowledge as a witness.

Moreover, Plaintiff was recently ordered to turn over documents in the probate matter. Documents and correspondence that includes Mrs. Glazer, directly contradict claims in this law suit.  For example, pleadings and correspondence in the probate matter contains allegations by the Glazers that the Estate's attorney or Mr. Klie's family members caused the foreclosure action and subsequent loss.  (See, Glazer 006-008, in camera, Ex. 2 to Brown Aff.).  Moreover, Mrs.

---

[7] A copy of the documents are attached as Ex. 1 to Brown Aff., Ex. B hereto.
[8] Portions of Mr. Glazer's deposition transcript are attached as Ex. C.

12

Glazer sent correspondence to the Estate alleging damage to Mr. Glazer (i.e., pecuniary and non-pecuniary loss) and threatening legal action against the Estate and its attorneys. [9]

It also appears that Mrs. Glazer and her husband are seeking as damages in this case their time and expenses in dealing with the Probate matter and remediation of the house, including the travel expenses incurred.  Although both Mr. and Mrs. Glazer have refused to produce invoices or detailed billing records from the Underlying Foreclosure Action, they estimated that it cost over $600,000 in fees to defend the Underlying Foreclosure Action.  Of the $600,000 incurred, with an additional $15,000 in expenses, there is nothing to show for the time invested.

At best, Mr. and Mrs. Glazer's inexperience drove up the fees, at worst, they are seeking as damages in this case the fees incurred in handling the probate matter and claims against the insurance company.  In fact, Mrs. Glazer sent correspondence to the insurance company representing herself as an attorney of record in the case. (See, N. Glazer "Entry of Appearance," FFA0000206-0000208, Glazer 004-05, Ex. 1 and 2 to Brown Aff. hereto).  Mrs. Glazer will testify with respect to these issues at trial and deposition.  It is clear from these additional documents, that Mr. and Mrs. Glazer made things far more difficult in the probate matter and with respect to their dealings with the insurance company, and of course the Foreclosure Action.  It was their tactics that drove up the foreclosure expenses, and dramatically increased the costs incurred, which Mr. Glazer now seeks as damages.  Moreover, Mr. Glazer testified he did not investigate anything with respect to the foreclosure and is not seeking as damages time he spent.  This conflicts with Mrs. Glazer's presentment of damages.  (L. Glazer Tr. 233-234).  The Defendants' position is that Mrs. Glazer's own testimony and other evidence will establish that a

---

[9] Mrs. Glazer made threats of bad faith, fraud, and material misrepresentation against the insurance company, and referenced her own observations regarding the condition of the property.

13

significant portion of the $600,000 of time invested by both she and her husband relates to other matters and is inflated.

Rather than addressing the damages issue, Plaintiff instead cites to irrelevant testimony, taken out of context. By the careful placement of ellipses and the citations to deposition testimony, Plaintiff misrepresents Defendants' testimony, in an effort to deflect from the disqualification argument and try and place Defendants in a "bad light."[10] Plaintiff even cites to another parties' brief regarding a different plaintiff's damages (in a separate matter) and falsely attributes it to these Defendants.

### B. Mrs. Glazer is a Critical Witness with Respect to Several Other Issues.

Mr. Glazer's Complaint asserts violations of four sections of the FDCPA, including 15 U.S.C. § 1692d (harassment and abuse); 15 U.S.C. § 1692e (false or misleading representations); 15 U.S.C. § 1692f (unfair practices); and 15 U.S.C. § 1692g (validation of debts). It appears that Plaintiff is arguing in order to be disqualified that his counsel must testify as to each and every claim in the Complaint. This is not the case.

#### 1. Allegations Relating to the Property Preservation Company.

Count III of Plaintiff's Amended Complaint alleges that the Defendants used unfair or unconscionable means to collect or attempt to collect a debt, including, but not limited to the following:

> (II) Taking or threatening to take non-judicial actions to effect, disposition or disablement of a property when defendants did not have a present right to possession of the property as collateral through an enforceable security interest in violation of 1692f (6); and

---

[10] The general vindictiveness and tone of the opposition brief goes beyond zealous representation and further establishes that Plaintiff's counsel and law firm should be disqualified.

(III) communicating with the consumer regarding a debt by posting notices on conspicuous locations meant to attract the attention of third parties in violation of 15 U.S.C. § 1692f(7).

Plaintiff further alleges in Count I, that the Reimer Firm aided or abetted Safeguard to break and enter into the Subject Property, in violation of 15 U.S.C. §1692d thereby causing damage to the house, conversion of property, and repairs and remediation and posted notices on the house, thereby embarrassing Plaintiff. (Amended Complaint, ¶¶ 81-86). Mr. Glazer deferred to Mrs. Glazer with respect to whether there were notices posted on the house. (L. Glazer Tr. 212-213). Again, Mrs. Glazer will testify as to these issues, including the damage and repair to the property.

Mrs. Glazer will testify as to her contact and communication with Safeguard and Chase with respect to the FDCPA harassment claim. Moreover, Mrs. Glazer's own communications with the National Mold Remediation, inspectors and insurance company establish that <u>she</u> gave them unfettered access to the property in 2008 and early 2009, well before Safeguard allegedly entered the property.

### 2. Allegations Regarding Violations of §1692e and § 1692g of the FDCPA

Glazer also alleges that Chase and the Reimer Firm made false statements and concealed facts relating to the promissory note in responding to discovery and in other pleadings in the foreclosure action. (Amended Complaint, ¶ 90). The Glazers arranged to view the note and now allege that <u>included with the note</u>, was an unrecorded September 2003 assignment of mortgage from Coldwell Banker to Fannie Mae and that Defendants had knowledge of the unrecorded assignment. Defendants contest the fact that this unrecorded assignment was affixed to the note and this is an issue that Mrs. Glazer will testify about, as both she and her husband had conflicting accounts. (L. Glazer Tr. 175-177, 184-186). Moreover, Mrs. Glazer will testify as to

Plaintiff's claim regarding validation of the debt and her related communications with the Reimer Firm.

Accordingly, and for the reasons set forth herein, continued representation by Mrs. Glazer at trial would be in direct violation of Rule 3.7 of the Ohio Rules of Professional Conduct, as she is a necessary witness. Per Rule 1.16, of the Ohio Rules of Professional Conduct, Plaintiff's counsel shall withdraw from representation of a client if continued representation would violate a rule of professional conduct—Rule 3.7 here.

IV. **CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendants Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., Ronald Chernek and Darryl Gormley respectfully request that this Court grant Defendants' Motion to Disqualify the Law Offices of Larry R. Glazer and Nicolette Glazer and Strike Class Allegations.

Respectfully submitted,

s/Lori E. Brown
**TIMOTHY T. BRICK (0040526)**
**LORI E. BROWN (0071480)**
**CATHERINE F. PETERS (0078044)**
**GALLAGHER SHARP**
Sixth Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115
(216) 241-5310 Phone
(216) 241-1608 Facsimile
E-mail: tbrick@gallaghersharp.com
lbrown@gallaghersharp.com
cpeters@gallaghersharp.com
**Attorneys for Defendants Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A., Ronald Chernek and Darryl Gormley**

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on this <u>13th</u> day of July 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>s/Lori E. Brown</u>
**TIMOTHY T. BRICK (0040526)**
**LORI E. BROWN (0071480)**
**CATHERINE F. PETERS (0078044)**
**GALLAGHER SHARP**
**Attorneys for Defendants Reimer,**
**Arnovitz, Chernek & Jeffrey Co., L.P.A.,**
**Ronald Chernek and Darryl Gormley**