# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **LAWRENCE R. GLAZER,** | ) | **CASE NO. 1:09CV1262** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **REIMER LAW CO., ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendants' Reimer Law Co., Ronald Chernek and Darryl Gormley's Motion for Summary Judgment. (ECF # 295) and Plaintiff Lawrence R. Glazer's Motion for Summary Judgment on the Issue of Liability Under the Fair Debt Collection Practices Act. (ECF # 293). For the following reasons, the Court denies Plaintiff's Motion and grants, in part, Defendants' Motion.

### Allegations of the Fourth Amended Complaint

According to Plaintiff Lawrence Glazer ("Glazer"), Defendants engaged in unfair and/or deceptive acts and practices in violation of the Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. § 1692 *et seq.*, as amended and the Declaratory Judgment Act. Glazer seeks damages, declaratory relief and other equitable relief.

According to his Fourth Amended Complaint ("FAC") Glazer alleges Defendants Reimer, Arnovitz, Chernek & Jeffrey Co., LPA, Ronald Chernek and Darryl Gormley are all "debt collectors" as defined by 15 U.S.C. § 1692(a)(6) of the FDCPA. Glazer contends JP Morgan Chase Bank NA ("JP Morgan") and Chase Home Finance LLC ("CHF") were distinct

entitites with JP Morgan as an approved seller and servicer for Fannie Mae and Freddie Mac and a member of the Mortgage Electronic Registration System ("MERS"), while CHF was an approved seller, servicer and third party custodian for Fannie Mae and Freddie Mac and also a member of MERS.

During the 2008 mortgage crisis Glazer alleges many of CHF serviced loans went into default due to borrowers inability to keep current with payments, however, other loans were declared and treated as accounts in default due to wrongful acts of CHF and JP Morgan employees, including failure to obtain timely and accurate information on the loans serviced and failure to update or correct loan data in a timely fashion.

Glazer alleges that JP Morgan and CHF outsourced certain default servicing functions to First American Default Information Services LLC. ("First American"). First American's principal business was to collect debts owed or asserted to be owed to other entities and to enforce security interests in real property via judicial foreclosure and bankruptcy proceedings on behalf of lenders and servicers.

Glazer asserts that First American, pursuant to an outsourcing agreement with CHF/JP Morgan, identified, monitored and handled loans already in default, including referring delinquent loans to attorney debt collectors like Defendants. Defendants routinely made representations to consumers and courts about the status of the defaulted loans, including the name of the creditor, the unpaid principal balance amount, the due date, interest rate, monthly payment amount, delinquency status, fees and corporate advances without obtaining hard copies of the underlying documents and without engaging in any quality control. As a result, Glazer contends First American and Defendants lacked a reasonable basis for their representations to

borrowers and courts resulting in inaccurate claims. Furthermore, Glazer contends Defendants failed to identify themselves as debt collectors in their initial communications with consumers and rushed to file foreclosure complaints without the requisite investigation and verification. Furthermore, Defendants assessed fees against consumers who requested pay off amounts that were not authorized by either the loan documents or state law and were not actually incurred.

Glazer further alleges that as part of a scheme targeting borrowers in default who had equity in properties secured by mortgages owned by government sponsored entities like Freddie Mac or Fannie Mae, Defendants concealed the identity of the actual owner of the loan and would falsely represent that CHF or JP Morgan was the creditor of the loan and the owner and holder of the note. In furtherance of the scheme, Glazer alleges Defendants would record intervening assignments ultimately naming CHF as the mortgagee of record. These intervening assignments represented they were the result of a bona fide sale of the Note for valuable consideration when in fact, they never sold, conveyed or transferred any ownership rights to any Chase entity but instead transferred only servicing rights. Defendants further left out of their filings allonges that revealed the true owner of the debt and would file lost note affidavits alleging CHF was the owner of the promissory note when in fact, the note was held by a custodian for the benefit of the actual creditor and owner.

Lastly, Glazer alleges Defendants agreed with property management companies to conduct unwarranted and unannounced home inspections with the true purpose of collecting on the debt owed. This included leaving notices in conspicuous places and publicizing the delinquent borrowers' account with the purpose of harassing, oppressing and embarrassing the borrower. Defendants would then assess fees for the inspections, maintenance and costs even though they were not actually incurred.

**Background Facts of the Case**

In 2003, Charles Klie, former brother-in-law of Glazer, purchased residential property located in Upper Arlington, Ohio. Klie executed a promissory note ("Note") secured by a mortgage ("Mortgage") from Coldwell Banker ("Coldwell") for the property. In September 2003, Coldwell sold and assigned the Note and Mortgage to Federal National Mortgage Corporation ("Fannie Mae") but the assignment was never recorded. Coldwell continued to service the Loan until October 2007, when it transferred the servicing rights to Chase. At the same time, Coldwell assigned the servicing rights on the mortgage to JP Morgan and JP Morgan executed a corresponding assignment to Fannie Mae. The JP Morgan to Fannie Mae assignment was not recorded. On November 1, 2007, Chase assumed the day-to-day servicing of the Loan on behalf of JP Morgan.

Klie maintained current payments on the Loan until his death in January 2008. His fiduciaries, Glazer included, informed Chase that a probate proceeding in Franklin County, Ohio would handle all of Klie's debts, including the Loan. Chase did not file a creditor claim in probate court. According to Glazer, as of July 31, 2008, the time for making a creditor claim lapsed and, as a result, all unsecured debts not asserted by a creditor were barred and extinguished. Around this time, Glazer came into possession of the property.

In May 2008, First American, acting as default servicer on behalf of Chase, referred the matter to Defendant Riemer, Arnovitz, Chernek & Jeffrey Co. ("RACJ"), to initiate foreclosure proceedings. On June 2, 2008, the Reimer firm and Defendant Chernek prepared an assignment of the mortgage and note from JP Morgan to CHF. This assignment was executed and recorded. At this time, the Klie loan was in default. Furthermore, the debt was still purportedly owned by Fannie Mae. Yet, during the foreclosure action, Glazer alleges that Chase falsely represented it

was the owner and holder of the Note and Mortgage. Furthermore, the foreclosure Complaint alleged the original note was lost or destroyed when, according to Glazer, it was held by the custodian Chase for the benefit of Fannie Mae. Finally, on summary judgment in the foreclosure action, Defendants attached a copy of the Note and attested it was a true and accurate copy of the original Note in their possession. The foreclosure Complaint contained a validation notice stating that CHF is the creditor to whom the debt is owed and further named Glazer as a defendant.

After being served with the foreclosure Complaint in June of 2008, Glazer sent a letter on July 7, 2008, through his attorney and wife Nicolette Glazer, to Defendants the Reimer firm and Chernek that he disputed the validity of the debt and allegedly requested verification thereof. Defendants did not provide the requested verification. On July 25, 2008, transfer of the subject property to Glazer was approved by the Probate Court as a beneficiary of Klie's Will. Defendants never identified Fannie Mae as the owner of the Note and Mortgage but continued to allege CHF was the creditor in an Amended Complaint in Foreclosure.

Glazer originally filed this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and state law claims against Chase and other named Defendants, including RACJ and Cindy A. Smith. In addition, Glazer alleges that Defendants unlawfully entered and damaged the property while winterizing it. Glazer also claims that Defendants placed new locks on the doors even though Plaintiff put a note on the house saying it was not abandoned.

On March 31, 2010, the Court dismissed the federal claims against Chase, RACJ, Smith and other Defendants. Because the Court dismissed all the federal claims, the Court refused to exercise jurisdiction over the state law claims. On appeal, the United States Court of Appeals for the Sixth Circuit affirmed, in part, and reversed, in part. The Sixth Circuit found that this Court

properly dismissed the claims against Chase, but that it erred in dismissing the claims against RACJ because a law firm conducting a mortgage foreclosure is partaking in "debt collection" under the FDCPA. *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453, 464 (6th Cir. 2013). In addition to reinstating the federal claims against RACJ, the Sixth Circuit reinstated the state law claims as well. Glazer did not appeal the Court's decision to dismiss Smith. During the pendency of Glazer's appeal, Glazer prosecuted his state law claims in state court. Those claims were adjudicated and are no longer before this Court.

Glazer's FAC alleges claims for violations of the FDCPA including: Harassment or Abuse under 1692d; False or Misleading Representations under 1692e(2)(A) and (B) and (10); Unfair Practices under 1692f(1)(6)and (7); and Validation of Debts under 1692g(b).

## LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).[1]

### Count I Harassment or Abuse in Violation of 1692d of the FDCPA

Count One of Glazer's Fourth Amended Complaint alleges Defendants violated § 1692d of the FDCPA when they caused their employees, subcontractors, and/or agents to break into the subject property on two separate occasions to winterize the property, change the locks and shut off utilities, resulting in damage to the property. Glazer alleges Defendants knew the property

---

[1] Both parties raised a number of objections to evidence or testimony presented in support or in opposition to summary judgment within the motions and oppositions themselves. The Court finds these objections were not properly raised as they were not presented in a separate motion.

was not abandoned and was the subject of a contested foreclosure proceeding.  This was done, according to Glazer, in order to harass, annoy and pressure him as title owner to pay off the debt.

Defendants attest they have no contractual relationship with Safeguard, the entity that was responsible for entering the subject property.  Defendants further attest they had no communication with Safeguard, did not direct Safeguard's actions, had no control over Safeguard and had no knowledge of Safeguard's actions.  Rather, Safeguard was hired by CHF and acted on Chase's instructions.  Defendant Chernek attests in his affidavit that: 1) Reimer firm has no contractual relationship with Safeguard and is not an agent of Safeguard; 2) he did not participate in any transaction between CHF and Safeguard regarding the subject property; 3) it is his understanding CHF retained Safeguard to perform property preservation services on the subject property; 4) he caused no damage to the Subject property and never entered the subject property and  5) neither Chernek nor any employee of Reimer directed the actions of Safeguard. (Affidavit of Chernek para. 12-28).  These attestations are echoed by Arnovitz and Gormley in their respective affidavits.  All deny any relationship, agency or otherwise, between themselves, the Reimer firm and Safeguard.

Glazer responds that Reimer knew Safeguard had been hired by CHF to perform property inspections and debtor interviews in the Klie matter and attempted to collect amounts for Safeguard's property inspection and maintenance as evidenced by CHF's Reinstatement Quotes. (See ECF 293-2, 217, 219).   Glazer cites to ECF #216 exhibit AD to show Defendants requested occupancy status on the subject property on March 12, 2009.  Exhibit AD is work order updates of Safeguard that show Chase Prime is Safeguard's client.

Glazer appears to argue that Defendants knew or should have known that Safeguard would reenter the subject property to winterize it in anticipation of a sheriff's sale despite no

decree of foreclosure and without the consent of Glazer to enter the property. Defendants should have known that their request for an occupancy determination would necessarily require Safeguard to reenter the subject property. However, Exhibit R of ECF #216 reveals Defendants moved to withdraw the sheriff's sale on March 10, 2009, over a month before Safeguard entered the property. A March 12, 2009 entry simply reads, "Requested occupancy status." *Id.* It does not say to whom the request was made and certainly does not indicate it was a directive issued to Safeguard by Defendants to enter the property. Without any evidence establishing an agency, contractual or other relationship demonstrating that Safeguard acted at the direction of or on the authority of Defendants or demonstrating some degree of control by Defendants over the conduct of Safeguard, Safeguard's entry and reentry onto the subject property and any resulting damage were not due to the actions of Defendants and the Court grants Summary Judgment for Defendants on Count I of Glazer's Fourth Amended Complaint for Harassment and Abuse under 1692d.

## Count II False or Misleading Representations under 1692e(2)(A) and (B) and (10)

In Count Two of his FAC, Glazer alleges Defendants violated Sections 1692e(2)(A) and (B) and (10) of the FDCPA by falsely representing the character, amount, legal status and/or ownership of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt. He further alleges Defendants used false or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer.

The Court provides a bullet point timeline of key dates as reference for the analysis below:

- 2003 Klie purchases subject property and signs Note and Mortgage from Coldwell.

- September 2003 Coldwell assigns Note and Mortgage to Fannie Mae but continues servicing the Note.

- Oct-Nov 2007 Coldwell transfers servicing rights to Chase.

- Oct 29, 2007 Coldwell assigns Note and Mortgage to JP Morgan.

- November 1, 2007 Chase begins servicing loan.

- Klie dies January 2008.

- Loan defaults February 2008.

- April 3, 2008 Chase sends notice of default to Klie.

- May 21, 2008 Reinstatement Letter sent to Klie

- June 2, 2008 Assignment of Note and Mortgage to Chase from JP Morgan.

- June 5, 2008 foreclosure filed

- June 28, 2008 Restatement letter sent to Klie Estate

- July 7, 2008 Letter from Nicolette Glazer to Reimer

The FDCPA at 15 U.S.C. § 1692e(2)(A)(B) and (10) reads in pertinent part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of–

    (A) the character, amount, or legal status of any debt; or
    (B) any services rendered or compensation which may be
    lawfully received by any debt collector for the collection of a debt.

(10) The use of any false representation or deceptive means to collect or
attempt to collect any debt or to obtain information concerning a consumer.

"To plead an FDCPA claim, a plaintiff must allege (1) that he or she is a "consumer" as defined by the Act; (2) that the "debt" arises out of transactions that are primarily for personal,

family, or household purposes; (3) that the defendant is a "debt collector" as defined by the Act; and (4) that the defendant violated § 1692e's prohibitions." *Smith v. Nationstar Mortg., LLC,* 756 F. App'x 532, 535–36 (6th Cir. 2018) citing  Wallace v. Wash. Mut. Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012).   An action under §1692e is not limited to actions against consumers. See *Montgomery v. Huntington Bank,* 346 F.3d 693, 697 (6th Cir. 2003).   "To violate § 1692e, a debt collector's representation or action must be materially false or misleading (meaning it must tend to mislead or confuse the least sophisticated consumer), *id.* at 326–27, and its purpose must be to induce payment by the debtor." *Smith,* 756 F3d at 536 citing *Grden v. Leikin Ingber & Winters PC,* 643 F.3d 169, 173 (6th Cir. 2011).   As a court within this circuit discussed:

> For a communication to fall under the FDCPA protections it must "be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." ("a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections" of the Act).  Obviously, communications that expressly demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment.(third-party letter directing debtor to contact creditor was sent in connection with collection of a debt). Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection. (Internal citations omitted.)

*McDermott v. Randall S. Miller & Assocs., P.C.,* 835 F. Supp. 2d 362, 369–70 (E.D. Mich. 2011) quoting *Grden v. Leikin Ingber & Winters, PC* 643 F.3d 169,173 (6th Cir. 2011).  "Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer." *Grden,* 643 F.3d at 172. "The test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." *Id.* "Applying this standard, district courts in this circuit1 have held that when a plaintiff knew that

the debt collection agency was not attempting to collect on a debt owed by him, then as a matter of law, he cannot sustain an FDCPA claim under § 1692(e) or § 1692(f)." *McDermott* at 371-72 quoting *Kane v. National Financial Svs., Inc.* 2011 WL 6018403 (E.D. Mich 2011).

As an initial matter, the parties dispute whether the Klie loan was a debt for personal, family or household purposes. Glazer has produced the Klie loan application demonstrating Klie sought the loan to purchase the home for his primary residence. Glazer, in his Motion for Summary Judgment, further produced the declaration of Klie's ex-wife who attests Klie bought the subject property for his primary residence. (See D. Klie decl. ECF #293-4). Defendants have produced no evidence challenging the nature of the loan and the Court finds it is a debt subject to the FDCPA.

Specifically, Glazer alleges that on June 5, 2008, Defendants filed a Complaint for foreclosure that falsely represented CHF was the owner and holder of the Note whose whereabouts were unknown and that the loan was in default since January of 2008. That same day, Glazer alleges Defendants filed and served on Glazer an FDCPA Notice of Validation falsely representing CHF was the creditor of the debt.

Defendants further filed a lost note affidavit in the foreclosure action falsely representing: the original Note was lost or destroyed, the Note could be accelerated upon default without further notice to the borrower and that the Note was assigned to CHF.

On June 20, 2008, Defendants made a reinstatement quote demanding payment of $5,836.6, falsely representing the amount of debt and corporate advances owed.

On August 26, 2008, Defendants filed an Amended Foreclosure Complaint falsely representing that CHF owned and held the note, the whereabouts of which were unknown and that Klie was in default on the note since January 2008.

12

That same day Defendants filed a FDCPA Notice of Validation falsely claiming that CHF was the creditor of the debt.

In responses to admissions, Defendants falsely asserted the whereabouts of the Klie note were unknown to Defendants.

On December 18, 2008, Defendants filed a Motion for Summary Judgment with attachments, falsely representing that the attached Note was a true and accurate copy of the original and that Klie was in default from January or February 2008.

Glazer further alleges Defendants falsely represented in a Reply brief that JP Morgan assigned the mortgage to CHF on June 2 2008 and that the whereabouts of the Note were unknown.

On March 25, 2009, Defendants falsely represented that Klie's account was current through January 1, 2008, no other payments were made and the Note was accelerated on April 3, 2008.

Lastly, Glazer alleges Defendants knew or should have known that the assistant secretary and vice president of CHF that signed supporting affidavits in the foreclosure case were mere titles given by CHF to these officers in order to allow them to robo-sign documents supporting foreclosures and bankruptcy proceedings and these titles came with no other duties or authority.

Defendants move for summary judgment on Count II of Glazer's FAC on a number of bases. First, Defendants assert the FDCPA has a one-year limitation period, therefore, any alleged misrepresentations by Defendants were required to be brought no more than one year from the date they were issued. Glazer filed his Complaint on June 2, 2009, consequently, any allegedly FDCPA-violating communication issued before June 2, 2008 is time-barred.

Second, the Defendants contend the foreclosure Complaint alleged CHF was a holder of

the Note, which was not a misrepresentation as Ohio law affirms the holder of a note may enforce it even if it is not the owner.

Third, Defendants contend their status as holder or creditor render any representations of ownership immaterial as they had the legal right to file for foreclosure. Thus, Glazer cannot assert any injury because Defendants could properly bring the foreclosure action.

## CHF as Holder or Creditor

The foreclosure Complaint identified CHF as the "holder" of the Note. Pursuant to Ohio law O.R. C. § 1303.31 (A):

"Person entitled to enforce" an instrument means any of the following persons:

(1) The holder of the instrument;
(2) A nonholder in possession of the instrument who has the rights of a holder;
(3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 1303.38 or division (D) of section 1303.58 of the Revised Code.

(B) A person may be a "person entitled to enforce" the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Glazer alleges Defendants falsely represented CHF as the owner, holder and creditor of the note and mortgage in question. Ohio law holds that a loan servicer is a creditor if it began servicing the debt before default. Under the FDCPA a "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed...." 15 U.S.C. § 1692a(4). The Sixth Circuit already affirmed that Chase was a creditor because it had started servicing the Klie debt when the debt was current based in part on Glazer's own allegations in his Complaint. See *Glazer*, at pg 5. See also Glazer's FAC at para 43, which states, "On November 1, 2007 Chase assumed the day to day servicing rights of the Klie loan." This is the law of the case and Glazer cannot contravene his own factual allegations or the Sixth Circuit's holding in his Motion for

14

Summary Judgment.   Thus, insofar as Glazer asserts CHF falsely represented it was the creditor or lacked standing to bring the foreclosure action because it was not a creditor, this matter has already been decided when the Sixth Circuit affirmed this Court's dismissal of CHF.

A review of the foreclosure Complaint and Amended Foreclosure Complaint reveals Defendants brought the foreclosure action on behalf of CHF as the holder of the Note in the Complaints not on behalf of CHF as owner.  At the time of the foreclosure action O.R.C. § 1301.01 defined "holder" of a negotiable instrument as:

> (a) If the instrument is payable to bearer, a person who is in possession of the instrument;
> (b) If the instrument is payable to an identified person, the identified person when in possession of the instrument.

In the June 2, 2008, Chase represented it was assigned the Note and Mortgage and produced an assignment, prepared by Defendants, showing that JP Morgan assigned the Note and Mortgage to Chase on June 2, 2008, two days before Defendants filed the foreclosure action. Although Defendants could not produce the Note at the time of the filing, the Sixth Circuit has affirmed that attorneys are not required to ensure their client can prove their case prior to filing suit, so long as there is evidentiary support or they are likely to have evidentiary support after reasonable opportunity for discovery.  See *Harvey v. Great Seneca Fin. Corp.* 453 F.3d 324 (6th Cir. 2006).  Here, Defendants represented their client, CHF, was the holder of the Note and Mortgage in their foreclosure Complaint but then filed a lost note affidavit on June 24, 2008 from Chase representative Cindy Smith, an officer of CHF who attested the Note was assigned to Chase but Chase was unable to be locate it after a diligent search.  The original Note was ultimately discovered and produced to Glazer during the foreclosure litigation.

Glazer disputes this representation, contending that CHF misrepresented that the Note

was lost.  Glazer cites to the testimony of CHF's representative deponent in the foreclosure case that CHF was the designated custodian and holder of the original Note for the benefit of the true owner, Fannie Mae, since 2007 and that the Note was held in Monroe, LA until it was delivered to Defendants in December of 2009.  Glazer further asserts that the Smith affidavit makes an additional misrepresentation that the Note was accelerated when it was not, nor was notice of the acceleration provided the Klie estate or Glazer with an opportunity to cure in 30 days despite the plain language of clause 6(C) of the Note.

The Court finds Glazer's arguments against CHF's status as a holder unavailing.  First, by Glazer's own admission, CHF was the holder of the Note as asserted by its representative deponent.  Regardless of whether they were custodial holders, the Note is endorsed in blank thus, under O.R.C. § 1301.01, CHF would be the holder as the physical Note was purported to be in its possession by Glazer's own admission.  Second, CHF's own representation in the affidavit of Smith is not contravened as there is simply no evidence demonstrating CHF knew the location of the Note yet couldn't produce it.  If CHF was correct in identifying itself as the holder and subsequently produced the original Note during the litigation, the Court finds no genuine issue of fact arises and Defendants did not violate the FDCPA by representing CHF was the holder of the Note.  Nor did Defendants violate the FDCPA by representing CHF could not locate the Note at the time of filing since there is no evidence contravening Smith's affidavit.   As there is no genuine issue of fact, the Court finds that Defendants' representation that CHF was the holder of the Note was not false and the lost note affidavit was not a false representation.

Furthermore, Glazer, in his Motion for Summary Judgment, submits the Fannie Mae Servicing Guide that reads in pertinent part:

Fannie Mae is at all times the owner of the mortgage note, whether the note is in

our portfolio or whether we own it as trustee for an MBS trust. In addition, Fannie Mae at all times has possession of and is the holder of the mortgage note, except in the limited circumstances expressly described below.  [...] In some jurisdictions, only the "holder" of the note may conduct a foreclosure. In any jurisdiction in which our servicer must be the holder of the note in order to conduct the foreclosure, we temporarily transfer our possession of the note to our servicer, effective automatically and immediately before commencement of the foreclosure proceeding. When we transfer our possession, our servicer becomes the holder of the note during the foreclosure proceedings. If the borrower reinstates the loan or the servicer ceases to service the loan for Fannie Mae for any reason, then possession of the note at that time automatically reverts to Fannie Mae and the note must be returned to the document custodian. At that time, Fannie Mae also resumes being the holder, just as it was before the foreclosure proceedings. ***The transfer of our possession, and any reversion of possession to us are evidenced and memorialized by our publication of this paragraph. This Guide provision may be relied upon by a court to establish that the servicer conducting the foreclosure proceeding has possession, and is the holder, of the note during the foreclosure proceeding unless the court is otherwise notified by Fannie Mae.***   (Emphasis added).

(ECF#215-2: 0174-75).

Thus, if Glazer's allegations are true that Fannie Mae is the true owner of the Note and mortgage, then Fannie Mae transfers possession of the Note to CHF and authorizes them to be holder of the Note.  Thus, under Glazer's own theory of the case,  the Court finds Defendants did not make a material misrepresentation they were the holder of the Note.

However, the above Fannie Mae servicing guide does give pause because it begins by representing that, under certain circumstances, Fannie Mae is the true owner of the mortgage note.  According to Glazer, since Fannie Mae was the owner of the Klie Note and Mortgage, Defendants' June 2, 2008 Assignment from JP Morgan to Chase, purporting to assign the Note and Mortgage, was a misrepresentation of the true owner and therefore, is a violation of FDCPA 1692e.   Glazer further cites the Court to the deposition of Kevin Johnson, a CHF mortgage officer, who in the foreclosure action conceded there was an apparent assignment of the Note and Mortgage from Coldwell to Fannie Mae in 2003 that was never recorded.  (ECF #293-2 pgs

589-595). The Commitment for Title provided by First American Title did not capture Fannie Mae's ownership of the Note and Mortgage. On June 2, 2008, Defendants prepared an assignment from JP Morgan to CHF of the Note and Mortgage, which Defendants then provided to the Court in the foreclosure action establishing CHF's rights in the mortgage to bring the foreclosure action. This appears on its face to be a misrepresentation, or at least presents a factual issue whether this constitutes a misrepresentation. In the foreclosure Complaint, Defendants reference the June 2, 2008 assignment as conferring on CHF the rights to bring the foreclosure action.

The Court finds there is a genuine issue of fact concerning the true owner of the Note and Mortgage such that a jury could find Defendants made a misrepresentation. However, the inquiry does not end here as the Sixth Circuit has held that "a statement must be more than just misleading-it must be materially false or misleading to violate Section 1692e." *Clark v. Lender Processing Services, LPS*, 562 Fed. Appx 460, 466 (6th Cir. 2014) quoting *Wallace v. Wash. Mut. Bank, F. A.* 683 F.3d 323, 326 (6th Cir. 2012). "The materiality standard...means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.*

Defendants contend there was no material misrepresentation as they undisputedly had the right to bring the foreclosure action as servicer/holder. However, the Court agrees with Glazer that, standing aside, whether a party may bring a foreclosure action does not insulate it from liability under the FDCPA for material misrepresentations made in the foreclosure proceeding regarding the true owner of the Note and Mortgage. See *Wallace,* 683 F.3d at 387. ("We disagree that the issue of standing in Ohio, even if resolved in Lerner, Sampson's favor, has any bearing on whether misidentifying a creditor is materially misleading under the Fair Debt

Collection Practices Act.").

It is Glazer's burden to show that Defendants made a material misrepresentation of the "character, amount or legal status of the debt."  If Fannie Mae were the true owner of the Note and Mortgage, was the Defendant-created assignment showing Chase as the owner of the Note and Mortgage a material false representation?   No party has pointed the Court to the assignment of the Mortgage and Note from either Coldwell or JP Morgan to Fannie Mae.  There is no dispute that if there were such an assignment it was never recorded.  The Preliminary Judicial Report in the foreclosure action does not reference any ownership of the Note and Mortgage by Fannie Mae.  Glazer does point the Court to the documents produced by Defendants showing Fannie Mae was the loan investor and Glazer cites to the deposition of Kevin Johnson, mortgage officer for CHF, taken during the foreclosure action wherein the parties discuss an assignment for Coldwell to Chase.   Defendant Daryl Gormley described Fannie Mae as an investor of the Note.   (Gormley depo. pg. 46).

The Sixth Circuit has held "[t]he Fair Debt Collection Practices Act is an extraordinarily broad statute" and must be construed accordingly. *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir.1992); see also *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir.2014). "District courts have decided, and we agree, that a clearly false representation of the creditor's name may constitute a "false representation ... to collect or attempt to collect any debt" under Section 1692e." *Wallace,* 683 F.3d at 327.  But the Court must determine if the least sophisticated consumer would be misled or confused by the representation.

In his deposition, Glazer was asked about CHF's alleged representation that it was the holder and owner of the note:

Q.  Okay.  Well, let me ask you this question: You're claiming they made this

misrepresentation.
A. Uh-huh.
Q. How did you rely on this misrepresentation?
(Counsel for Plaintiff objected based on it asking for a legal conclusion.)
A. As I understand your question I can't, I can't answer that without divulging
privileged communications with my attorney.
Glazer depo. Pg. 137.
Q. Did the filing of the complaint in the name of Chase Home Finance confuse
you in any way?
A. Greatly.
Q. Why did it confuse you?
A. Because I was named as a defendant in a foreclosure action and I had no debt.
I never took a note on the house. So that greatly confused me.
(Glazer pgs. 141-42).
When asked further about what representations he relied on Glazer clarified:
A. So my apologies. I relied on the, the Complaint for Foreclosure that your
clients filed. I relied on the representation that Chase was owed a debt and in this
paragraph that Chase was a creditor of the debt. So I, I relied on those
representations.

Glazer has testified he was confused by being named a defendant in the foreclosure

action and by Chase's representation it was owed a debt. Because there is a genuine issue of fact

whether CHF was the owner of the Note and Mortgage as represented in the Assignment from JP

Morgan to Chase and as represented by the Foreclosure Complaint wherein Defendants alleged

that the mortgage was assigned to CHF based on the above assignment, the Court denies

summary judgment for both parties on the issue.

It was this issue that gave the Court the most pause because there is no evidence that

Glazer, Klie or Klie's estate had any knowledge of Fannie Mae's relationship to the subject

property until discovery in the foreclosure action. Thus, the Court finds any likelihood of

confusion by Glazer as to the ownership of the Mortgage and Note remote. The evidence before

the Court shows only Chase received payments on the mortgage Note, only Chase issued the

reinstatement letters and requested payment before the foreclosure action. There is no evidence

Fannie Mae communicated directly with Klie, Klie's estate or Glazer and no evidence Fannie

Mae ever demanded payments from the same. Fannie Mae is a silent partner in the mortgage assignments and any likely confusion seems remote. Yet, this issue is factual and rightfully determined by the jury.

Defendants move for summary judgment on any alleged misrepresentations in the Reinstatement letters sent to Klie and the Klie estate prior to June 2, 2009 as they are outside the FDCPA limitations period. Civil actions under the Fair Debt Collection Practices Act may be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Generally, "when a debt collector initiates a deceptive, abusive, or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date." *Smith v. Lerner, Sampson & Rothfuss, L.P.A.,* 658 F. App'x 268, 273 (6th Cir. 2016). Thus, the Court finds that any claims based on alleged misrepresentations contained in communications dated prior to June 2, 2008 are time barred. These include any letters or communications to Klie or the Klie estate, with the exception of the June 28, 2009 Reinstatement letter. However, the majority of issues raised by Glazer concern alleged misrepresentations found in the foreclosure Complaint and Amended Foreclosure Complaint, which fall within the one year limitation period.

Glazer next contends that Smith's affidavit makes material misrepresentations that the Note was in default and could be accelerated when, according to Glazer, the plain language of the Note requires a notice of default and 30 day period to bring current the defaulted payment before acceleration.

The Court finds no misrepresentation in the plain language of the Note. At paragraph 6 (B)and (C) the Note reads: "default occurs if the full amount of each monthly payment is not made on the due date." Once the borrower is in default the Note says the holder "may"send a

written notice telling the borrower by a date certain and "may" require the borrower to immediately pay the full principal amount that has not been paid along with all interest owed within 30 days. Because the Note indicated CHF had an option, Smith's representation that no further notice was required to accelerate the Note was not false.

Furthermore, the evidence before the Court shows the pay tables on Klie's Note reflect the last payment was made in January 2008. Thus, the Note was in default in February. An acceleration warning dated April 3, 2008, (ECF # 293-2 pg 137) was sent to Klie informing him he had 30 days to cure or the Note would be accelerated. Based on the amount owed according to the April 3, 2008 notice, the first missed payment would have been February 2008. No dispute of the debt was filed by the Estate. Deborah Klie declares that the administrators tried to reinstate the loan by submitting three checks but they were for a sum less than the amount owed and the checks did not comply with CHF's requirement they be certified checks, not personal checks and were returned. In short, the evidence does not bear out any misrepresentation in the Smith affidavit.

Lastly, under §1692e, Glazer alleges Defendants misrepresented the amount owed on the debt. According to Glazer, First American prepared a reinstatement quote in the amount of $3,294.30. Defendants added $1744.25 in fees and costs, attributing the total to CHF and delivered the quote to the subject property addressed to the deceased Klie. On June 30, 2008, First American again submitted a reinstatement figure to Defendants in the amount of $3,941.36 and Defendants added $1,894.25 and submitted to Klie's estate a total figure of $5,835.61. Defendants' fees and costs were added to the amount CHF asserted was debt owed on the Klie loan under section 9 of the mortgage instrument. Glazer alleges Defendants' fees and costs were inflated as Klie's monthly mortgage payment was $628.69. Glazer asserts Klie was current on

his payments until January 31, 2008. Yet, the First American quote alleges nonpayment from an unknown date until February 1, 2008 in an amount exceeding any unpaid principal and interest. The additional fees allegedly included hidden and inflated attorney fees, future fees not yet earned and fees for property inspections that were not completed at the time of the reinstatement quotes.

Glazer further contends Defendants fraudulently double billed and inflated the costs associated with the title work in the foreclosure case as Nova Title, the title agency that provided much of the title work, is located at the same address as Defendants, shares employees with Defendants, is owned or controlled by Defendants and has a third party title agency provide the actual title work.

Defendants respond that Glazer lacks standing to assert such claims as he was not the subject of the reinstatement letters, none of the disputed costs or fees were asserted in the foreclosure Complaints and Defendants did not attempt to collect them from Glazer. Furthermore, the letters expired long before they were served on Glazer and were only submitted in the foreclosure action attached as exhibits to the Reply brief to a Motion for Summary Judgment, not for the purpose of attempting to collect on the reinstatement figure, but for the sole purpose of demonstrating that CHF required certified checks from the estate in order to reinstate the loan. Defendants further argue that Glazer can show no concrete injury arising from the reinstatement letters as they did not seek payment from Glazer and were not directed to Glazer, but were directed to the Klie estate, the owner of the subject property at the time the letters were sent. The letters were sent before Glazer ever had title to the subject property.

The Court finds that because these letters were not sent to Glazer, but were sent to the Kile administrators and expired on their own terms by the time Glazer received them, they do not

support Glazer's FDCPA claims. The foreclosure Complaint asks for judgment on the principal balance owed, which shows $58.330.28, along with real estate taxes advanced and insurance costs. The Complaint did not seek attorney fees, or title insurance costs. Defendants never served the reinstatement letters on Glazer with the intent of inducing him to pay the reinstatement costs and he cannot show injury resulting therefrom. Furthermore, the Sixth Circuit has held that the one year limitation period for an FDCPA violation runs from the date the violation occurs as the plain language of the FDCPA reads. Therefore, the letters sent prior to the June 2, 2009 filing of the Complaint in this action are barred. As for the June 28, 2008 letter, while not time barred it was never addressed to Glazer but sought reinstatement from the estate. It was only served on Glazer nearly nine months after the foreclosure action was initiated and not for the purpose of collecting a debt directly or indirectly from Glazer but for the limited purpose of showing what CHF required for reinstatement from the estate. The costs in the reinstatement letter were not sought in the foreclosure action. Finally the terms of the reinstatement letter expired by its own terms long before it was ever served on Glazer. Therefore, the Court finds any misrepresentations in the reinstatement letters cannot form the basis of an FDCPA violation.

**Count III**

§ 1692f prohibits the use of unfair practices in connection with the collection of a debt. A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

24

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
(B) there is no present intention to take possession of the property; or
(C) the property is exempt by law from such dispossession or disablement.
(7) Communicating with a consumer regarding a debt by post card.

According to Glazer, Defendants violated the above sections by seeking costs and fees in the May 21, 2008 and June 30, 2008 reinstatement letters; on April 21, 2009, Defendants asserted actual possession of and disabled the subject property through employees, agents or contractors without the legal authority to do so. He further alleges Defendants posted notices on the property that it was vacant and threatened to take non-judicial action to effect dispossession of the property all the while knowing the property was a probate asset until July 26, 2008 and was not abandoned. Glazer alleges he incurred damages as a result of these acts and intrusions.

The Court, having already disposed of the claims under 1692e for alleged misrepresentations in the reinstatement letters, applies the same conclusion for actions brought under 1692f arising from these letters.

Furthermore, in the absence of any evidence that Defendants had control or authority over the actions of Safeguard in entering the property or damage thereof, the Court finds Defendants cannot be liable for the acts of a third party. The evidence before the Court demonstrates that Safeguard was a client of CHF, not Defendants, and it was CHF who directed the actions of Safeguard. Therefore, Defendants are entitled to summary judgment on Glazer's claims arising from Safeguards actions. "Under Ohio law, an employer or principal is not liable for the negligence of an independent contractor over which it had no right to control the manner of performing the work." *Byrd v. Law Offices of John D. Clunk Co., LPA,* No. 1:09-CV-076, 2010 WL 816932, at *8 (S.D. Ohio Mar. 8, 2010) See, e.g., *Clark v. Southview Hospital &*

*Family Health Center,* 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (Ohio 1994). Furthermore, the actions of Safeguard occurred in the context of a foreclosure action, clearly a judicial action, and thus, falls outside the § 1692f(6) prohibition for non judicial actions. Glazer offers as evidence of Defendants' liability for Safeguard's actions that "Defendants knew that Safeguard had been hired by CHF to perform property inspections and debtor interviews." (Glazer MSJ at pg 34). Thus, Glazer acknowledges it was CHF that hired Safeguard, not Defendants.

Glazer asserts that Defendants advertised the property for sale for nearly two months after the foreclosure decree had been withdrawn. But again, this does not present an FDCPA violation under § 1692f because it was in the context of a judicial action -i.e.- foreclosure action, and this subsection applies only to non-judicial actions.

Therefore, the Court grants summary judgment for Defendants on Glazer's claims brought under § 1692f.

## Count IV Violation of 15 U.S.C. §1692g Validation of Debts

Count IV of Glazer's FAC alleges Defendants continued collection activities despite having been notified that Glazer disputed the debt or a portion thereof and without obtaining verification of the debt as required under the FDCPA. Specifically,Glazer alleges Defendants were advised in writing by Glazer that he disputed the debt after he received the initial communication in the form of the foreclosure Complaint, yet Defendants withheld the true identity of the creditor and the full copy of the Note.

Defendants contend Glazer's validation claim fails because he is not a "consumer" under the FDCPA because he never signed the note, was not legally obligated to pay on the Note, and Defendants never sought payment from him. According to Defendants, Glazer did not acquire the property until July 25, 2008, after the foreclosure Complaint was filed on June 4, 2008 and

after the July 7, 2008 letter from Glazer's wife to Defendants was sent.  The foreclosure

Complaint named Glazer as a defendant because he had an interest in the property at the time

due to his status as an intended beneficiary of the Klie estate.   Defendants did not consider

Glazer an obligor on the Note, therefore, he was not a "consumer" under § 1692g and cannot

meet the elements thereunder.

Furthermore, Defendants contend the July 7, 2008 letter from Nicolette Glazer to

Defendants does not suffice as an attempt to seek validation of the debt.  In her letter, Nicolette

does not state she represents Glazer.  Nicolette was not a party to the foreclosure action initially

and Defendants assert Glazer represented himself pro se in the foreclosure action at the time the

letter was sent.  According to Defendants, the letter did not request validation but sought

correspondence from the Estate on the servicing of the loan, the preliminary judicial report and

mortgage payment history.  Defendants believed they were prohibited from communicating with

Nicolette on the loan under §1692c(b), which reads in pertinent part, "without the prior consent

of the consumer given directly to the debt collector, or the express permission of a court of

competent jurisdiction, or as reasonably necessary to effectuate a post-judgment judicial remedy,

a debt collector may not communicate, in connection with the collection of any debt, with any

person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted

by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

15 U.S.C . § 1692g imposes certain requirements on debt collectors regarding notice:

Within five days after the initial communication with a consumer in connection
with the collection of any debt, a debt collector shall, unless the following
information is contained in the initial communication or the consumer has paid
the debt, send the consumer a written notice containing–

(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C.A. § 1692g (West)

It further requires the debt collector to respond to requests from consumers for validation of the debt.

(b) Disputed debts:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

This section of the FDCPA imposes an obligation on the debt collector that "if a consumer disputes the amount of a debt, a debt collector must "cease collection" until it "obtains verification of the debt" and mails a copy to the debtor." *Obduskey v. McCarthy & Holthus LLP,* 139 S. Ct. 1029, 1036, 203 L. Ed. 2d 390 (2019).

Glazer argues he is a consumer under the FDCPA because Defendants attempted to collect a debt from him in the filing of their foreclosure Complaint. Under the FDCPA, a "consumer" is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). When a debt collector demands payment for a debt from a person who otherwise has no legal obligation to pay (alleging that the person is obligated to pay), the law will view the

person as a "consumer."  *See Diaz v. D.L. Recovery Corp.*, 486 F. Supp. 2d 474, 476-77 (E.D. Pa. 2007).  Here, Defendants argue they did not demand payment from Glazer.

Thus, the question is whether Glazer is a "person legally obligated to pay a debt."  The parties do not dispute that the debt owed is the unpaid balance on the Note.  In Ohio, a grantee of an interest in land subject to a mortgage is not liable for the underlying debt, including a deficiency judgment after foreclosure on the mortgage, unless the grantee assumes the debt obligation.  *See Metropolitan Life Ins. Co. v. Riek*, 62 Ohio App. 216, 217 (6th Dist. 1939): *Keehl v. Roberts*, 32 Ohio App. 237, 238-39 (8th Dist. 1929).  Absent any indication that Glazer assumed the obligation under the mortgage on the property, he is not legally obligated to pay that debt.  Not being legally obligated to pay the debt, he cannot be a "consumer" under the FDCPA.

However, Glazer contends that in *Glazer v. CHF, et al.*, 704 F.3d 453, 460 (6th Cir. 2013), the Sixth Circuit, in affirming in part and reversing in part this Court's Order dismissing Glazer's claims, held, "filing any type of mortgage foreclosure action, even one not seeking a money judgment on the unpaid debt, is debt collection under the Act."  Glazer asserts he is a successor in interest to the Klie property as of May 5, 2008, not July 25, 2008 as claimed by Defendants.  The foreclosure Complaint named Glazer and sought a money judgment, foreclosure and costs to be paid out of the proceeds of the sale of the property.  The Supreme Court has held "nothing in the primary definition requires that payment on a debt come "from a debtor."  The statute speaks simply of the "collection of any debts ... owed or due." § 1692a(6).  Moreover, the provision sweeps in both "direc[t]" and "indirec[t]" debt collection.  *Obduskey,* 139 S. Ct. at 1036 quoting 1692a(6).

Glazer further asserts that the July 7, 2008 letter from Nicolette Glazer to Defendant Chernek expressly stated that Glazer was "disputing the validity of the debt stated in count 1 of

the [foreclosure] complaint." At that point according to Glazer, Defendants were required to stop collecting on the debt until they provided verification of the debt and delivered that verification to Glazer. Defendants never provided such verification. Defendants respond they could not provide such verification to Nicolette until she entered an appearance as Glazer's counsel. But Glazer argues he directed his wife to represent his interests in the foreclosure and she filed an Answer and Request for Admittance Pro Hac Vice in the foreclosure case and its docket lists Nicolette as attorney for Glazer.

The FDCPA's definition section, 15 U.S.C. § 1692a, defines a "debt" as: "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." § 1692a(5). As stated previously, "consumer" is defined under the FDCPA as someone "legally obligated or allegedly obligated to pay any debt." The Court recognizes that a foreclosure action is a debt collection and that the payment sought need not come from the debtor in order to qualify under the FDCPA as debt collection. However, whether a collection activity qualifies as an FDCPA-governed debt collection is a distinct inquiry from whether the Glazer is a consumer. To be a consumer, Glazer must be legally obligated to pay the debt -i.e. the Note. He is not. Ohio law expressly holds that a non-signatory to a note is not obligated to pay, nor is Glazer obligated to pay on any deficiency. Thus, even though Defendants' foreclosure action was a debt collection activity, Glazer is not a consumer because he had no legal obligation to pay the debt and Defendants' foreclosure action did not seek payment from Glazer. This same conclusion was reached by the District Court of Kansas in *McDaniel v. South & Assoc.,* 325 F. Supp.2d 1210, (D. KS 2004), wherein the Court held that the plaintiff could not prevail is his claim under §1692g of the

FDCPA against the defendant because plaintiff never signed the closing or loan documents associated with a Note and Mortgage and that, except for being named in a foreclosure complaint, Plaintiff was never considered an obligor on the Note and Mortgage. Therefore, the Court found Plaintiff was not a consumer under the FDCPA and could not prevail on a claim for failure to validate in violation of §1692g.

These same facts are found in this case. The mortgage foreclosure Complaint describes the debt owed as the outstanding balance of the Note plus interest owed. Glazer's interest in the subject property did not obligate him to satisfy the debt owed as affirmed by Ohio law. Glazer has not asserted, nor can he assert, he had any obligation to pay the debt owed by Klie on the Note and Defendants never asserted a claim against Glazer for payment of the balance of the Note. Therefore, the Court finds Glazer was not a consumer under the FDCPA and grants summary judgment for Defendants on Count IV of Glazer's FAC.

In addition, the Court finds Defendants' reluctance to validate the debt in response to the July 7, 2008 letter from Nicolette Glazer is understandable considering the fact that she is not a debtor and did not identify herself in the letter as counsel for Glazer. Glazer points out that the letter was delivered on Lawrence Glazer letterhead and Nicolette identified herself as an attorney and wife of Glazer. However, it is a violation of the FDCPA for a debt collector to communicate with anyone other than the debtor or the debtor's attorney in a debt collection matter. Chernek's email response to Nicolette reflects that reluctance as he requests that she enter an appearance as counsel. While Nicolette's letter does expressly state Glazer is challenging the debt without identifying herself as Glazer's counsel and with the express authorization to the debt collector from Glazer, Defendants could not validate the debt to Nicolette without running afoul of the FDCPA-prohibited disclosures to third parties, thereby avoiding an additional claim for violating

another prohibition under the FDCPA.  Thus, Defendants are entitled to summary judgment on Glazer's claims under § 1692g of the FDCPA.

Lastly, the Court finds genuine issues of fact militate against summary judgment for Defendant Gormley as the parties dispute whether he used "any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." § 1692a(6).

Therefore, for the foregoing reasons, the Court grants summary judgment for Defendants on Counts I, III and IV of Glazer's FAC.  The Court finds genuine issues of fact require denying Glazer's and Defendants' Motions for Summary Judgment on Count II of Glazer's FAC insofar as it pertains to representations made by Defendants' that CHF was the owner of the Note and Mortgage.

IT IS SO ORDERED.


Dated: November 25, 2019            /s/Christopher A. Boyko
                                    CHRISTOPHER A. BOYKO
                                    United States District Judge